*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PACIFICA MARINE, INC. and MIKE BENCHOFF, | ) ) ) | Supreme Court No. S-15619 |
| Appellants, | ) ) | Superior Court No. 3AN-12-07847 CI |
| v. | ) ) | O P I N I O N |
| SOLOMON GOLD, INC. and STATE OF ALASKA, DEPARTMENT OF NATURAL RESOURCES, | ) ) ) ) ) | No. 7035 – August 21, 2015 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jack Smith, Judge.

Appearances: Adam W. Cook, Birch Horton Bittner & Cherot, Anchorage, for Appellants. Jennifer M. Coughlin, K&L Gates, LLP, Anchorage, for Appellee Solomon Gold, Inc. Ashley C. Brown, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee State of Alaska.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.   INTRODUCTION

A bidder for mineral leases failed to turn in a required form that would have demonstrated that he was a citizen older than 18 and thus qualified to bid. The Director of the Department of Natural Resources' Division of Mining, Land & Water later allowed the bidder to remedy the omission, but on appeal the Department's Commissioner determined that the bidder's omission was not immaterial or due to excusable inadvertence and reversed the Director. As a result, the bidder lost his leases. The bidder unsuccessfully appealed to the superior court and now appeals to this court. Because the Commissioner's factual findings were based on substantial evidence in the record, his interpretations of regulations were not legally erroneous, and his application of law to facts was not arbitrary, unreasonable, or an abuse of discretion, we affirm. We also conclude that the superior court did not abuse its discretion by declining to order a trial de novo.

## II.   FACTS AND PROCEEDINGS

### A.   Background

In 2011 the Department of Natural Resources (Department) decided to auction mining leases for 20,000 acres of tide and submerged lands offshore of Nome. Public notice was published in newspapers and on the Department's website in August. The online notice stated that the auction was happening "[i]n accordance with AS 38.05.250 and the attendant regulations in 11 AAC 86 and 11 AAC 82." The notice specifically provided that "[u]nder 11 AAC 82.435 each bidder at the sale must also provide a statement of their qualifications to acquire and hold mineral rights in the State of Alaska."

Alaska Administrative Code, title 11, section 82.435 provides that "[e]ach bidder at a sale by public auction shall deposit with the commissioner or other officer conducting the sale the deposit and information required by 11 AAC 82.425 – 11 AAC

82.430." The referenced range of regulations includes 11 AAC 82.428, which provides that "[b]efore the date of a competitive lease sale, a bidder must comply with 11 AAC 82.200 and 11 AAC 82.205." Section 82.200 limits lease ownership to persons who have reached the age of majority and corporations.[1] Section 82.205 provides that "[a]n individual, in order to be qualified to apply for, obtain, or transfer an interest in a [mineral lease], shall submit to the department . . . a signed, dated statement including the applicant's name, address, telephone number, and a certification that the applicant is of the age of majority, . . . [and] a signed, dated statement including the applicant's name, address, telephone number, and certification that the applicant is a citizen of the United States, or is an alien qualified under AS 38.05.190."[2]

The online notice of the auction included links to several forms, including the outcry bid form and the statement of qualifications form. The outcry bid form was one page. In the middle of the page, the following appeared:

> **\*\*IMPORTANT INFORMATION - PLEASE READ**
>
> Submit this form and the minimum bid amount in the enclosed envelope immediately following winning the bid. . . .
>
> . . . .
>
> You must submit at least one completed copy of the Statement of Qualification[s] form for any tract or tracts bid upon. You may attach the Statement of Qualifications form to this Bid Form, or submit it immediately prior to the auction on September 28th.

---

[1] *See* 11 Alaska Administrative Code (AAC) 82.200 (2015). These qualifications are also required for other types of leases, exploration licenses, or permits. Legal guardians or trustees of qualified individuals and associations of entities can also acquire these interests.

[2] 11 AAC 82.205(a)-(b).

The statement of qualifications form was three pages; one was the actual form a bidder fills out to certify his age and citizenship, while the other two provided instructions. Under the heading "How To File," the instructions read, in part:

> If you are submitting this statement in support of an outcry bid, you must provide all documents at the time of bidding.

**B.    The Auction**

The auction was held in Nome on September 28, 2011. Blank copies of the bid and statement of qualifications forms that had been identified in the notice were available. The sign-in sheet had three columns, one for bid number, another for bidder name and address, and a third that read "Qualification Statement Filed? (yes/no)." Two of the bidders relevant to this appeal, Scott Meisterheim and Ken Kerr, wrote "Yes" in the third column next to their names on the sign-in sheet. Mike Benchoff, the appellant here, left that space blank.

Two Department employees, Kerwin Krause and Bill Cole, were present at the auction. According to the agenda of the auction, Krause announced that "[a]ll bidders must sign in, submit their qualification form and receive a bidder # card prior to bidding," and that "[y]ou must have a bidder # in order to bid." Krause also explained that the outcry auction would record the three highest bids for each tract, and that "[i]n the event that the highest bidder does not fulfill their bid obligations, the tract will be offered to the second and/or third highest bidders, successively." Although bidders were not supposed to receive a bid card until they had submitted a statement of qualifications form, Department officials did not follow this protocol, and Benchoff, Meisterheim, and Kerr all received bid cards.

Benchoff was the high bidder on ten tracts in the outcry auction and the second-highest bidder on three. Meisterheim was the high bidder on two tracts and the

second-highest bidder on one.  Kerr was the second-highest bidder on two tracts and the third-highest bidder on four.

### C.    Post-Auction

Shortly after the auction the Department determined that Benchoff, Meisterheim, and Kerr had not submitted statement of qualifications forms.  They were notified that they had been disqualified.  Krause contacted Meisterheim and Benchoff and reported that "both told me they had fil[l]ed one out but neglected to turn it in." The Department also held a public meeting in Nome on October 19, at which participants stated that "the auction process changed over three times, creating confusion," and that "[i]t seemed that the bidding process was casual with nobody responsible for checking documents and qualifications and that there was lots of confusion in the process."

### D.    The Director's Determination On Incomplete Bids

Director Brent Goodrum of the Department's Division of Mining, Land & Water issued the first adjudication in this case, the Director's Determination on Incomplete Bids, in October 2011.  The Director's Determination applied to the twelve tracts on which either Benchoff or Meisterheim was the high bidder, the three tracts on which Benchoff was the second-highest bidder, and one tract on which the Director mistakenly listed Benchoff as the high bidder.  Kerr was the second-highest bidder on that last tract, Tract 3.  The Director's Determination did not purport to apply to the other tract on which Kerr was the second-highest bidder, the four tracts on which Kerr was the third-highest bidder, or the tract on which Meisterheim was the second-highest bidder.

The Director referenced 11 AAC 82.445, which provides:

> No bid may be considered unless supported by the deposit and information required by 11 AAC 82.425, 11 AAC 82.428, and 11 AAC 82.430 unless the commissioner determines that any omission was immaterial

or due to excusable inadvertence and if the omission is corrected in the manner provided by notice of sale.

The Director wrote that "it appears that there may have been some misunderstandings during the sign-in process the day of the sale that contributed to the incomplete bids. Consequently, the omissions are determined to be due to excusable inadvertence." He gave Benchoff and Meisterheim ten days to file their completed statement of qualifications forms, and both did.

The Director's Determination also stated that "[t]he department is aware that there are several second and third-highest bids with omissions. Determinations regarding completeness of these bids will be made in the event that such determinations become necessary."

### E. Norm Stiles's Appeal

Norm Stiles was the second-highest bidder on Tract 4, one of the tracts on which Meisterheim was the highest bidder. In November 2011 he appealed the Director's Determination to Daniel Sullivan, the Commissioner of the Department.

### F. An Interlude – The Murphy Tracts

Dan Murphy, a properly qualified bidder, was the high bidder on Tracts 1 and 3. He did not make timely payments on these leases, which made them available to the second place bidders — Benchoff and Kerr, respectively. In early January 2012 the Department offered Kerr the opportunity to lease Tract 3. Krause, the Department employee who oversaw the lease auction, stated in a later affidavit that although he knew Kerr had not submitted the required statement of qualifications at the auction, he believed that Kerr had submitted the form shortly after being offered the opportunity to lease the tract. Kerr signed the lease in February, and the Department signed and executed it first in late March 2012 (by a non-authorized Department employee), and then again in August 2012 (by an authorized Department employee).

The Department did not offer Benchoff the opportunity to lease Tract 1 after Murphy failed to make his payment. The Commissioner later explained that "[s]ince Mike Benchoff was the #2 bidder for Tract 1, the division did not proceed with offering that tract for lease because of the pending appeal" of the Director's Determination.

### G. Norm Stiles's Appeal

The Commissioner acknowledged Norm Stiles's appeal in a January 26, 2012 letter. The letter explained that the appeal would stay any action on not just Tract 4 but also the eleven other tracts on which Benchoff or Meisterheim was the highest bidder "because a decision on this appeal will affect the other tracts and the bidders for those tracts." It also explained that the decision on appeal would not apply to four tracts the Director had included because as to Tracts 1, 17, and 23 "there is no uncertainty about the completeness of the highest bid," and the other, Tract 3, "was mistakenly included."

The Commissioner's letter noted that Department regulations allowed cross-participation in appeals and stated:

> By this letter, I am notifying the three highest bidders for [the twelve affected tracts] of their right to participate in this appeal. Participation in the appeal is voluntary. The applicant/bidder may respond to the issues presented in [Norm Stiles's] appeal (copy attached). Additionally, since the director's October 27, 2011 decision referred to "omissions of the two bidders" and "some misunderstandings during the sign-in process the day of the sale and incomplete bids," the applicant/bidder's response should also include any information that may be relevant to the sign-in and/or bidding process in Nome on September 28, 2011. . . . If nothing is received by [the response deadline], I will assume the applicant/bidder has chosen not to participate in the appeal.

Solomon Gold, Inc., the second-highest bidder on four tracts for which Benchoff was the highest bidder and an appellee here, participated in the appeal by a February letter to the Commissioner. Meisterheim and Benchoff did not submit any response.

Subsequently Stiles and Meisterheim reached an agreement whereby Meisterheim agreed to withdraw his successful bid on Tract 4 in exchange for Stiles's withdrawing his appeal. They communicated this to the Commissioner, who accepted their agreement and notified all parties that the appeal had been closed.

Solomon Gold appealed the Commissioner's decision to close the appeal to the superior court. Ultimately Solomon Gold and the Commissioner stipulated to an August 2012 order remanding the matter to the Commissioner for a decision on the merits. This order "reinstated" the stay as to twelve tracts: the ten on which Benchoff was the original high bidder, the one remaining on which Meisterheim was still the high bidder, and Tract 1, the tract for which Murphy was originally the high bidder but, due to his failure to pay, Benchoff was now in position to lease.

**H.     The Commissioner's Decision On Remand**

In early June 2013 the Commissioner issued his Decision on Remand. He "decided the October 27, 2011 Director's Determination was in error," and therefore rejected Meisterheim's and Benchoff's bids for the twelve tracts in the remand order.

The Commissioner's Decision on Remand first laid out the factual and procedural history of the lease auction and subsequent litigation. He quoted from three responses he had received to his January 26, 2012 letter that described the Nome auction. Two felt that the instructions were "abundantly" or "very" clear, while the third noted the potential for "confusion" amid "the extreme excitement of the day of the auction."

Turning to the merits the Commissioner "decide[d] that the October 27, 2011 Director's Determination was in error because it was contrary to the applicable law. The applicable regulations require that a bidder submit qualification statements before

or at the public auction." He distilled the statutory and regulatory requirements as follows:

> 11 AAC 82.428 and 11 AAC 82.435 require a bidder to submit the qualifications information described in 11 AAC 82.200 and 11 AAC 82.205 **before** or **at** a competitive mineral lease sale or auction. Under AS 38.05.250(b), the lease can only be offered to the **qualified** person who offers the highest bid. (Emphasis in original.)

The Commissioner determined that "the information in the DNR record does not support the director's finding of excusable inadvertence" under 11 AAC 82.445. The Commissioner noted that the public notice for the auction had documented the need for every bidder to submit a statement of qualifications at the sale. He noted that the agenda demonstrated that Krause verbally announced that requirement. He noted that the sign-in sheet included a column that asked whether the bidder had submitted the qualifications form, and that Meisterheim had written "yes" and Benchoff had left the space blank. And he noted that Krause wrote an email after the auction that reported that both Meisterheim and Benchoff had told him that they filled out the missing form but neglected to turn it in. The Commissioner thus announced his findings:

> Reviewed in its entirety, I find that the DNR record does not support the director's conclusion that Scott Meisterheim's and Mike Benchoff's failure to each submit the required Statement of Qualifications form prior to bidding at the Nome auction on September 28, 2011 was due to "excusable inadvertence." The record shows that all bidders had ample notice that the form was required prior to bidding at the Nome auction. While a minor technical omission on a Statement of Qualifications form, such as an incomplete address or phone number, might be viewed as immaterial or due to excusable inadvertence under 11 AAC 82.445, there is no analysis in the Director's decision or apparent basis in the record to conclude that failing *entirely* to submit a Statement of Qualifications form is immaterial or due to

excusable inadvertence. Contemporaneous information in the form of Kerwin Krause's October 13, 2011 email documented that both Scott Meisterheim and Michael Benchoff admitted they did not submit their Statement of Qualifications forms at the Nome auction. Finally, when given the opportunity to explain what happened at the Nome auction by responding to my January 26, 2012 letter, Scott Meisterheim and Michael Benchoff did not reply.

Even if it could be construed that Scott Meisterheim's and Michael Benchoff's failure to submit their Statement of Qualifications forms prior to bidding at the Nome auction was somehow due to "inadvertence,"[16] the Director erred by finding that inadvertence was excusable since (as discussed in Point #2) department regulations require that the qualifications statement information must be submitted prior to or at a competitive mineral lease sale and is a prerequisite that demonstrates a bidder is qualified to both apply for (bid) and acquire mining rights in Alaska.

There was "inadvertence" by department staff at the Nome auction since Scott Meisterheim and Michael Benchoff were given bid # cards that enabled them to make several outcry bids, without verification by department staff that Scott Meisterheim and Michael Benchoff had in fact submitted their Statement of Qualifications forms prior to bidding – a mistake that was not discovered until after the auction when department staff returned to Anchorage. But the staff error does not alleviate the bidder's responsibility to comply with the law and submit the required qualifications information, a requirement for which all bidders had notice prior to the Nome auction, nor is it grounds to disadvantage the other competing bidders who complied with the law and properly submitted their Statement of Qualifications forms prior to the bidding.

_____

[16] "Inadvertence" is defined as "the fact or action of being inadvertent; inattention." "Inadvertent" is defined as

"not turning the mind to a matter; inattentive; unintentional."
Webster's Ninth New Collegiate Dictionary, 1983.

The Commissioner therefore vacated the Director's Determination and rejected Meisterheim's and Benchoff's bids for the twelve tracts.

## I.    Benchoff's Appeal To The Superior Court

In late June 2013 Benchoff and Pacifica Marine, Inc., a company to which Benchoff had assigned some of his leasing rights,[3] appealed the Commissioner's Decision on Remand to the superior court. Pacifica Marine alleged that the Commissioner's decision lacked substantial support in the record, contained errors of law, and included application of law to facts that was either unsupported by the evidence or without a reasonable basis in the law. Pacifica Marine's reply brief requested a trial de novo under Alaska Rule of Appellate Procedure 609(b). Solomon Gold cross-appealed "for protective purposes," but largely operated as an appellee. The State also filed a brief as an appellee.

In January 2014 Superior Court Judge Jack Smith issued an order largely deciding Pacifica Marine's points on appeal. The superior court determined that there was substantial evidence to support the Commissioner's finding that the instructions were clear. It acknowledged that there was "conflicting evidence regarding the clarity of the instructions," but it determined that this did not change the substantial evidence finding because it was not the court's job to "reweigh the evidence or choose between competing inferences, but only to determine whether such evidence exists."

The superior court also concluded that the Commissioner's interpretation of the Department's regulations was largely reasonable and not arbitrary. The superior court determined that the Commissioner's interpretation as to excusable inadvertence had

---

[3]    We hereafter refer to these parties as Pacifica Marine, collectively.

a reasonable basis. But the court concluded that Alaska caselaw had established that "a variance is only material 'if it gives the bidder a substantial advantage over other bidders and thereby restricts or stifles competition.' " It rejected as "semantic" the State and Solomon Gold's arguments that this definition of materiality was limited to responsiveness in the procurement context, while this case concerned completeness in the mineral lease context.

The superior court concluded that the definition of "materiality" was not the crux of the case because the fact that the Commissioner was empowered to accept noncomplying bids if he found the omission immaterial or due to excusable inadvertence did not mean he was required to. Nothing in the regulations precluded "the Commissioner's stated policy . . . to reject bids where bidders wholly fail to submit an SOQ form."

The one point that troubled the superior court was the Department's acceptance of Kerr's bid for Tract 3 despite his noncompliance. The court found it "unclear from the record *why* the agency accepted Kerr's bid, as accepting a bid from a bidder who failed to submit an SOQ form appears to be contrary to the Commissioner's stated policy." (Emphasis in original.) It thus "require[d] more information regarding Kerr's bid, his SOQ form, and the process by which his bid was accepted," and invited the Department to file supplemental information, with Pacifica Marine entitled to respond.

The Department filed an affidavit from Bill Cole, one of the Department employees who had been present at the Nome auction and the employee who sent Kerr the lease for Tract 3. Cole stated that although in September 2011 he had known that Kerr had not submitted a statement of qualifications, he "had forgotten this information by January 2012," when he offered Kerr the lease. Cole concluded that the "notice of

successful bid to Mr. Kerr for Lease Tract 3 was mistakenly issued. I had no intention to offer Lease Tract 3 to a bidder for whom DNR did not have an SOQ form on file."

Pacifica Marine filed a brief arguing that the Commissioner's decision had been arbitrary because it failed to consider the disparate treatment of Tracts 1 and 3. It attached two affidavits. One was from Krause, the other Department employee present at the Nome auction. Krause testified that when he signed the lease to Tract 3 on behalf of the Department he "was aware that Mr. Kerr had not submitted an initial SOQ prior to or at the auction," but "believed however that he [Kerr] had remedied this SOQ filing shortly after receiving Mr. Cole's letter. I intentionally would not have signed this lease if I did not think my office had a valid SOQ document at this point in time for Mr. Kerr." The second affidavit was from Kerr. Kerr recounted a phone call with Krause, "[s]ometime prior to receiving and signing the lease," during which "Mr. Krause explained that DNR's not having received my SOQ at the auction would not prevent the award as it would Mike Benchoff and Scott Meisterheim because I was a second-place bidder not a first-place bidder."

The State filed a brief arguing that Tract 3 was not before the Commissioner and should play no role, and that the superior court should not consider the affidavits Pacifica Marine had included because they were outside the administrative record. The State further argued that Pacifica Marine had not made out a claim of selective enforcement because it had not shown a deliberate or intentional plan to discriminate. Solomon Gold also filed a brief making similar arguments and noting that when Kerr was offered the lease the Department's latest statement had been the Director's Determination, which was "extremely forgiving towards incomplete bids."

In June 2014 the superior court issued another order affirming the Commissioner's decision. The court stated that it would only consider the supplemental affidavits "to the extent that they help inform the Court as to what the Commissioner

considered (or did not consider) when making his decision." Because the supplemental record indicated that the grant of the lease to Kerr was a mistake rather than a exemption from the "strict policy" for second-place bidders, the Commissioner's decision not to accept Meisterheim's and Benchoff's noncomplying bids was not arbitrary and capricious, unreasonable, or an abuse of discretion.

Finally, the superior court ruled that Pacifica Marine had waived its selective enforcement and equal protection claims by only raising them in a footnote in the opening brief. The court went on to conclude that "even if not waived, appellants have not asserted a *prima facie* claim of an equal protection violation or selective enforcement," because such claims require evidence of a deliberate and intentional plan.

Pacifica Marine appeals.

## III.    STANDARD OF REVIEW

"Where the superior court acts as an intermediate court of appeal for an administrative decision, we directly and independently review the underlying administrative decision."[4]

"We recognize four standards to review administrative decisions. We apply a substantial evidence standard to questions of fact, a reasonable basis standard to questions of law involving agency expertise, a substitution of judgment standard to questions of law not involving agency expertise, and a reasonable and not arbitrary standard to an agency's interpretation of its own regulations."[5]

---

[4]    *Vonder Haar v. State, Dep't of Admin., Div. of Motor Vehicles*, 349 P.3d 173, 177 (Alaska 2015) (quoting *Conkey v. State, Dep't of Admin., Div. of Motor Vehicles*, 113 P.3d 1235, 1237 (Alaska 2005)).

[5]    *Gottstein v. State, Dep't of Natural Res.*, 223 P.3d 609, 620 (Alaska 2010) (footnote omitted).

Under the substantial evidence standard, "findings will be upheld so long as there is enough relevant evidence to allow a reasonable mind to adequately support such a conclusion. We will not reweigh conflicting evidence, determine witness credibility, or evaluate competing inferences from testimony, as these functions are reserved to the agency."[6]

"When applying the reasonable basis test, we 'seek to determine whether the agency's decision is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination.' "[7]

"We will defer to [an agency's interpretation of its own regulations] unless its interpretation is plainly erroneous and inconsistent with the regulation."[8] "[O]nce the interpretation of the regulations is resolved, the [agency's] application of the 'law' to the particular factual circumstances . . . is a matter committed to the [agency's] sound discretion. Consequently, 'our scope of review is limited to whether the decision was arbitrary, unreasonable or an abuse of discretion.' "[9]

---

[6]     *Vonder Haar*, 349 P.3d at 177 (internal quotation marks and footnote omitted) (quoting *McKitrick v. State, Pub. Emps. Ret. Sys.*, 284 P.3d 832, 837 (Alaska 2012)).

[7]     *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 299 (Alaska 2014) (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)).

[8]     *Id.* at 299 (quoting *Kuzmin v. State, Commercial Fisheries Entry Comm'n*, 223 P.3d 86, 89 (Alaska 2009)); *see also id.* at 301 ("[I]t is well established that an agency's interpretation of its own regulations is reviewed under the reasonable basis standard; this standard 'recognizes that the agency is best able to discern its intent in promulgating the regulation at issue.' " (quoting *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982))).

[9]     *Rose*, 647 P.2d at 161 (quoting *State, Dep't of Admin. v. Bowers Office*
(continued...)

"We review the superior court's decision whether to order a de novo trial or a de novo examination of the record for abuse of discretion."[10] "We will find an abuse of discretion when the decision on review is manifestly unreasonable."[11]

## IV.   DISCUSSION

### A.   The Commissioner's Findings Of Fact Are Supported By Substantial Evidence.

The Commissioner's Decision on Remand made only limited findings of fact, all of which are supported by substantial evidence.  The Commissioner found that "[t]he record shows that all bidders had ample notice that the form was required prior to bidding at the Nome auction."  He cited four sources in the administrative record to directly support this finding: the public notice, which stated that "[u]nder 11 AAC 82.435 each bidder at the sale must also provide a statement of their qualifications to acquire and hold mineral rights in the State of Alaska"; the auction agenda, which records Krause's verbal instruction prior to the auction that "[a]ll bidders must sign in, submit their qualification form and receive a bidder # in order to bid"; the sign-in sheet's reference to whether a bidder had filed his statement of qualifications, which Benchoff left blank; and Krause's October 13, 2011 email report that both Meisterheim and Benchoff had told him that they filled out the forms but neglected to turn them in.  Earlier in the Decision on Remand the Commissioner also cited three bidders who wrote in to describe the auction environment.  One of these bidders wrote

---

[9](...continued)
*Prods., Inc.*, 621 P.2d 11, 13 (Alaska 1980)); *see also Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623 (Alaska 2007).

[10]     *Treacy v. Municipality of Anchorage*, 91 P.3d 252, 270 (Alaska 2004).

[11]     *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, __ P.3d ___, Op. No. 7003 at 7, 2015 WL 1958657, at *3 (Alaska May 1, 2015).

that the "instructions were made abundantly clear" and that "[t]here was no basis for any misunderstanding"; another wrote that "[t]he documents, instructions, and process to participate in the sale were very clear" and that the auction "was handled professionally and clearly"; and the third differed, writing that "[t]here may well have been confusion even for educated people," because "[w]hat might appear to be simple instructions under ordinary circumstances may have been adversely affected by the extreme excitement of the day of the auction." Finally, the Department's regulations require the statement of qualifications to be filed "[b]efore the date of a competitive lease sale."[12]

This is "enough relevant evidence to allow a reasonable mind to adequately support"[13] the Commissioner's conclusion that "all bidders had ample notice that the form was required prior to bidding at the Nome auction." This court "will not reweigh conflicting evidence" when applying the substantial evidence standard.[14]

Moreover, although Pacifica Marine criticizes the instructions for being generally "confusing" and "contradictory," it does not cite any evidence that Benchoff personally was either not on notice of the requirement or confused by it. Pacifica Marine and Benchoff have never argued that the Department lost Benchoff's properly filed statement of qualifications form, or that a Department employee told him he did not have to file the form, or that he followed the instructions on the outcry bid form that allowed the form to be attached to the bid. The State points out that in Pacifica Marine's brief to the superior court it argued that "[i]f Mr. Benchoff's failure to submit an SOQ was due

---

[12]     11 AAC 82.428 (emphasis added).

[13]     *Vonder Haar v. State, Dep't of Admin., Div. of Motor Vehicles*, 349 P.3d 173, 179 (Alaska 2015) (quoting *McKitrick v. State, Pub. Emps. Ret. Sys.*, 284 P.3d 832, 837 (Alaska 2012)).

[14]     *Id.* (quoting *McKitrick*, 284 P.3d at 837).

to anything other than his own carelessness there is nothing in the record that says so." In that brief Pacifica Marine also affirmed that Benchoff "told DNR that in the midst of the excitement he had completed an SOQ but simply neglected to include it with his paperwork during sign-in," citing Krause's email.

Pacifica Marine also questions "[t]he Commissioner's factual conclusion that Mr. Meisterheim and Mr. Benchoff were the only successful bidders to fail to comply with the SOQ requirement." The Commissioner did not reach such a conclusion, except perhaps by implication. Instead, he recounted that not only Meisterheim and Benchoff but also Kerr failed to file the required form. The Commissioner's Decision on Remand only dealt with the twelve tracts that were listed in the superior court's remand order of August 30, 2012. The Commissioner did not make findings as to other tracts.[15]

Pacifica Marine's final argument regarding the Commissioner's factual findings is that they were incomplete. "Where an agency fails to consider an important factor in making its decision, the decision will be regarded as arbitrary."[16] The "important factors" Pacifica Marine seeks to have considered are why Kerr was granted a lease and "the testimony of the non-compliant bidders." The Kerr issue may be relevant to determining whether the Commissioner applied the policies arbitrarily or unreasonably, but the Department's treatment of Kerr was not an "important factor" in making its decision as to Benchoff. In the cases Pacifica Marine cites, agencies failed

---

[15]     Benchoff also suggests that Tract 3 went to Kerr "only after DNR rejected a first-place bid on that tract by Mr. Benchoff," but this is contradicted by the record. Benchoff was never the high bidder for Tract 3; he was just mistakenly listed as such by the Department for a period.

[16]     *See Se. Alaska Conservation Council, Inc. v. State*, 665 P.2d 544, 548-59 (Alaska 1983) (citing *State, Dep't of Transp. & Pub. Facilities v. 0.644 Acres, More Or Less*, 613 P.2d 829, 833 (Alaska 1980)).

to consider the direct effects of their actions.[17]  Kerr's actions had no bearing on the Commissioner's factual finding that Benchoff had adequate notice of the requirement that he submit a statement of qualifications form before bidding.  As to the second factor, "the testimony of the non-compliant bidders," Benchoff did not provide a response to the Commissioner's January 26, 2012 invitation to participate in the appeal.  That letter was clear that although "[p]articipation in the appeal is voluntary," if the Commissioner did not receive a response he would "assume the applicant/bidder has chosen not to participate in the appeal."

In *Gottstein v. State, Department of Natural Resources* we affirmed an agency decision that had been made after the Commissioner denied the appellants' request for a hearing.[18]  We held that the denial had not violated the appellants' due process rights or Department regulations, as the parties requesting a hearing had not presented the Commissioner with evidence of a dispute of material fact, as opposed to merely theories.[19]  In the instant case, Pacifica Marine and Benchoff never requested a hearing or presented any evidence in response to the Commissioner's invitation to participate in the appeal, nor did they request that the Commissioner reconsider his Decision on Remand and include evidence in support of that request.  Their arguments about an incomplete record are less compelling than those we rejected in *Gottstein*.

---

**17** *See Arkanakyak v. State, Commercial Fisheries Entry Comm'n*, 759 P.2d 513, 517 (Alaska 1988) (agency did not consider whether language barriers prevented non-English speaking Alaska Native from satisfying legal requirements); *0.644 Acres*, 613 P.2d at 831-33 (agency did not consider effect of new construction on adjacent property despite statutory requirement that it consider and minimize private injury).

**18** *See* 223 P.3d 609, 621-22 (Alaska 2010).

**19** *See id.* at 623.

In sum, substantial evidence supported the Commissioner's finding of fact that there was adequate notice of the requirement that the statement of qualifications be turned in prior to the auction.

**B.     The Commissioner's Interpretation Of 11 AAC 82.445 Was Not A Legal Error.**

11 AAC 82.445 forbids consideration of incomplete bids "unless the commissioner determines that any omission was immaterial or due to excusable inadvertence . . . ."[20] Pacifica Marine argues that the Commissioner's interpretation of the regulations lacked a reasonable basis and must be reversed.

The Commissioner did not explicitly define what makes an omission "immaterial or due to excusable inadvertence" in his decision, but he did contrast Benchoff's failure to submit his Statement of Qualifications form with other omissions that might be excusable under 11 AAC 82.445: "While a minor technical omission on a Statement of Qualifications form, such as an incomplete address or phone number, might be viewed as immaterial or due to excusable inadvertence under 11 AAC 82.445, there is no analysis in the Director's decision or apparent basis in the record to conclude that failing *entirely* to submit a Statement of Qualifications form is immaterial due to excusable inadvertence." He also wrote that Benchoff's inadvertence, if any, was not excusable "since . . . department regulations require that the qualifications statement information must be submitted prior to or at a competitive mineral lease sale."

---

[20]     The regulation arguably commits to the Commissioner's discretion the choice of whether to make a determination of materiality or excusable inadvertence, and arguably only allows omissions to be "corrected in the manner provided by notice of sale." But these were not the grounds the Commissioner relied on in his Decision on Remand, and because we affirm the merits of that decision we do not evaluate those alternative grounds by which it might be affirmed.

Pacifica Marine criticizes this latter determination, which it argues erected a rule "that the SOQ requirement could not be excused under any circumstances." This, it argues, is counter to the text of 11 AAC 82.445, which allows the Commissioner to excuse that requirement under at least some circumstances. But both this paragraph of the Commissioner's Decision on Remand and his discussion more generally focused on the "failure to submit" the required forms. The part of the regulations the Commissioner recounted was the timing ("must be submitted prior to or at a competitive mineral lease sale") rather than, for example, the information the regulations required bidders to provide. A rule that the failure to submit a form at all will not be deemed excusable inadvertence does not mean that other omissions, such as a failure to check a required box or the entry of an incomplete address, could not be found to be excusable inadvertence. Therefore the Commissioner's interpretation did not read 11 AAC 82.445 out of existence, as Pacifica Marine argues.

Although the Commissioner did not explicitly define "excusable inadvertence," the parties agree that the Black's Law Dictionary definition of excusable *neglect* provides a reasonable definition:

> A failure — which the law will excuse — to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the party's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party.[21]

The State and Solomon Gold argue that Benchoff's failure was due to his own "carelessness or inattention" to the notices of the statement of qualifications

---

[21] BLACK'S LAW DICTIONARY 1195-96 (10th ed. 2014).

requirement that the Commissioner documented. Pacifica Marine, in contrast, argues that the fact that Benchoff was given a bid card without filing the required form was an "unexpected hindrance or accident" and that the Commissioner was obligated to investigate whether the Department "induced a bidder into failing to submit an SOQ."

The State and Solomon Gold have the better argument. The Commissioner did not ignore the evidence that Department employees improperly gave Benchoff a bid card: He labeled this "inadvertence," "a mistake," and "staff error." But he did rule that this error "does not alleviate the bidder's responsibility to comply with the law and submit the required qualifications information, a requirement for which all bidders had notice prior to the Nome auction." By focusing on the fact that Benchoff was on notice of the requirements prior to the auction and therefore prior to any staff error, the Commissioner implicitly addressed and rejected Pacifica Marine's argument that the Department's mistakes at the auction were responsible for Benchoff's actions.

The Commissioner's decision is thus consistent with a definition of "excusable inadvertence" that Pacifica Marine agrees is reasonable. Particularly in light of the decision of Pacifica Marine and Benchoff not to participate in the appeal when it was before the Commissioner or seek reconsideration, and the corresponding absence of any evidence of actual reliance on Department employees' misstatements by Benchoff, the Commissioner's determination that "excusable inadvertence" did not include failing to turn in a form required by regulations, the public notice, the sign-in sheet, and the verbal instructions delivered at the auction had a reasonable basis.

The reasonableness of the Commissioner's definition of "materiality" is a slightly more complicated matter. As the superior court noted, we have defined materiality in other bidding contexts. For example, in *Chris Berg, Inc. v. State, Department of Transportation & Public Facilities* we explained that a variance in a bid to win a construction project "is material if it gives the bidder a substantial advantage

-22-                                                                      **7035**

over other bidders and thereby restricts or stifles competition."[22]  Because the mistake in that case — the placement of the price information for one item one line below its proper location — was "[a] minor technical defect or irregularity which does not and could not affect the substance of a low bid in any way," we held that it was immaterial and thus that rejecting the bid on that basis was an abuse of the agency's discretion.[23]

The Commissioner's decision, in contrast, did not define "materiality" in terms of "substantial advantage."  Instead the Commissioner focused on the magnitude of the omission, ruling that Benchoff's failure to turn in the required form at all was material, even if it was possible that a smaller omission, "such as an incomplete address or phone number," might have been immaterial.

Pacifica Marine argues that the definition of "materiality" recognized in earlier cases must apply in this case as well.  In both the procurement context and the leasing context the government's objectives are largely similar:  "to promote honest competition on an equal basis,"[24] and to maximize the use of public resources by getting the best deal possible while also minimizing the effort agencies are forced to expend addressing and correcting bid variances and omissions.  The similarity of the interests at play in the government procurement and leasing contexts argues in favor of a consistent definition of materiality.

The State and Solomon Gold argue that the Commissioner's interpretation of "materiality" should be accepted so long as it has a reasonable basis, even if it

---

[22]   680 P.2d 93, 94 (Alaska 1984).

[23]   *See id.*

[24]   *Lower Kuskokwim Sch. Dist. v. Found. Servs., Inc.*, 909 P.2d 1383, 1386 (Alaska 1996) (quoting *McBirney & Assocs. v. State*, 753 P.2d 1132, 1136 (Alaska 1988)).

conflicts with the definition of materiality we have previously announced. They point out that cases like *Chris Berg* addressed bid "responsiveness" in the context of government procurement, while this case addresses bid "completeness" in the context of government leasing. Because the term arises in a different context, they argue, the Commissioner's interpretation is entitled to the same deference it would receive had we not interpreted "materiality" in any of our prior cases. In this case the term "immaterial" appears in a Department regulation, and as a general matter "[w]e review an agency's interpretation and application of its own regulations using the reasonable basis standard of review."[25]

The deference due to an agency interpretation of a term that has already been interpreted by the courts is a complicated question.[26] It is also a question that we do not need to settle to decide this case because, as the State points out, the failure to submit a timely Statement of Qualifications form could "give[] the bidder a substantial advantage over other bidders and thereby restrict[] or stifle[] competition."[27] Along with forms like the Statement of Qualifications, bidders at public auctions must provide a

---

[25] *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 299 (Alaska 2014).

[26] *See, e.g.*, *King v. Alaska State Hous. Auth.*, 512 P.2d 887, 892-93 (Alaska 1973) (determining that a bidder's failure to timely submit a deposit was not material without reference to deferring to agency view, but also suggesting that "reasonable basis" standard of review applied). *Cf. Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (holding that, under federal law, "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion").

[27] *Chris Berg*, 680 P.2d at 94.

deposit.[28]  Following the auction these deposits are returned to "all unsuccessful bidders."[29]  The State reasons that if Benchoff failed or refused to ever submit a Statement of Qualifications form he would have become an "unsuccessful bidder" and thus entitled to the return of his bid deposit.  This would be a luxury unavailable to other high bidders, who would forfeit their deposits if they were unable to assemble the funds to cover the full purchase price.[30]  Thus, as the State pointed out at oral argument, a determination that the failure to file a Statement of Qualifications form is immaterial would encourage bidders not to file the form until, in the days and weeks following an auction, they had acquired adequate financing to pay the full cost of the leases.

We thus agree with the State that the failure to submit a Statement of Qualifications form is material under either of the proposed definitions of the term.  We therefore hold that the Commissioner's interpretation of 11 AAC 82.445 was not a legal error.

C.      **The Commissioner's Application Of The Regulations To The Facts Of This Case Was Not Arbitrary, Unreasonable, Or An Abuse Of Discretion.**

For the reasons discussed above, the Commissioner did not act arbitrarily or unreasonably or abuse his discretion when directly applying 11 AAC 82.445 to Benchoff's omission.  The Commissioner determined that the requirements were sufficiently clear prior to the auction that Benchoff's failure to submit the required Statement of Qualifications form could not be attributed to any confusion on the day of the auction and thus was not due to excusable inadvertence.  He also determined that the

---

[28]     11 AAC 82.435.

[29]     11 AAC 82.475.

[30]     Indeed, the State represented at oral argument that in this case the Department did return Benchoff's bid deposit.

omission was too significant to be deemed immaterial, and as discussed above the omission could have provided Benchoff with a substantial advantage over other bidders. None of these determinations was arbitrary, unreasonable, or an abuse of discretion.

But Pacifica Marine argues that the Commissioner's application of the regulations was flawed not solely due to his treatment of Benchoff's omission, but also due to the Department's inconsistent treatment of another bidder who failed to submit the required Statement of Qualifications, Ken Kerr.[31]  As the superior court noted, a haphazard application of the regulations might demonstrate that the Commissioner had acted arbitrarily or unreasonably by holding Benchoff to a different standard than other bidders.

Pacifica Marine's invocation of Kerr's interactions with the Department is arguably improper because those interactions were not before the Commissioner when he issued his Decision on Remand.  Alaska Rule of Appellate Procedure 604(b) provides that the record on appeal from an administrative agency "consists of the original papers and exhibits filed with the administrative agency."[32]  We have stated that when courts hear appeals from agency decisions, "the record on appeal in such cases properly consists

---

[31]    In Pacifica Marine's appeal to the superior court it also alleged that the Department's actions amounted to selective enforcement and thus a violation of Benchoff's right to equal protection, a claim the superior court rejected.  Although Pacifica Marine's statement of points on appeal to this court included an allegation of an equal protection violation, its briefing locates the arguments about selective enforcement within the larger argument that the Commissioner's application of 11 AAC 82.445 was arbitrary, unreasonable, or an abuse of discretion, rather than advancing an independent equal protection claim.

[32]    Alaska R. App. P. 604(b)(1)(A).

of evidence that was either 'submitted to' or 'considered by' the administrative board."[33] We have also held that, at least in modification proceedings involving significant previous evidence, it is error for a reviewing court to consider even evidence that is in the administrative record if it is "beyond the evidence which the Board considered."[34]

The administrative record does not contain any evidence of the final disposition of the tracts on which Kerr bid. The only evidence that Kerr received a lease despite failing to submit a Statement of Qualifications form came via submissions to the superior court during the course of Pacifica Marine's initial appeal to that court. This evidence was thus introduced via post-decision affidavits like those we have previously held "must be struck."[35] If Pacifica Marine and Benchoff deemed this evidence important to the Commissioner's decision, it was imperative that they submit it for his consideration during the initial adjudication rather than waiting for the matter to be appealed before actively participating.

Even if we were to consider the affidavits, they demonstrate that although Kerr's and Benchoff's bids reached different resolutions, at no time did the Commissioner or other Department staff treat them differently. When the Department granted Kerr his lease the most recent statement from the Department was the October 2011 Director's Determination, under which bidders were permitted to late-file their Statement of Qualifications forms. The Director's Determination was at that point

---

[33] *Alvarez v. Ketchikan Gateway Borough*, 28 P.3d 935, 939 (Alaska 2001) (quoting *Oceanview Homeowners Ass'n v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 798 (Alaska 1984)).

[34] *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 169 (Alaska 1974).

[35] *State, Dep't of Natural Res. v. Transamerica Premier Ins. Co.*, 856 P.2d 766, 776 (Alaska 1993) (citing *L.L.M. v. P.M.*, 745 P.2d 599, 600 (Alaska 1987) and Alaska R. App. P. 210).

on appeal, but the Department did not issue a revised interpretation or application of 11 AAC 82.445 until the Commissioner's Decision on Remand in June 2013. By then the Department's decision to grant Kerr his lease was final and, unlike in Benchoff's case, was not protested or appealed. Thus, although Benchoff was disqualified for failing to submit a Statement of Qualifications form while Kerr was not, this difference did not arise from any arbitrary, unreasonable, or even inconsistent treatment by the Commissioner and Department.

### D. The Superior Court Did Not Abuse Its Discretion By Failing To Order A Trial De Novo.

Alaska Rule of Appellate Procedure 609(b)(1) provides that " [i]n an appeal from an administrative agency, the superior court may in its discretion grant a trial de novo in whole or in part." Pacifica Marine argues that the superior court was required in this case to hold a trial de novo because there were "signs of a significantly incomplete Agency Record." Pacifica Marine particularly focuses on the superior court's request for supplemental information concerning the Department's treatment of Kerr, which it argues amounted to "tacitly admitting that an augmented agency record would help clear up any concerns."

In discussing the superior court's discretion to order a trial de novo when hearing an appeal from an administrative decision, we have emphasized "that a trial de novo is 'a departure from the norm.' "[36] We have explained that it is an appropriate tool if a party "had been denied the opportunity to present to the [agency] relevant and

---

[36] *Gottstein v. State, Dep't of Natural Res.*, 223 P.3d 609, 628 (Alaska 2010) (quoting *S. Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of Adjustment*, 172 P.3d 774, 778 (Alaska 2007)).

material evidence."[37]  The one case Pacifica Marine identifies in which this court held that a trial de novo was required fits this mold:  In *Nash v. Matanuska-Susitna Borough* we concluded that when an agency refused to allow a party to present witness testimony "he was prohibited from presenting relevant, material evidence, and was thereby effectively denied due process," and therefore entitled to a trial de novo in the superior court.[38]

This case does not present a similar due process violation, nor does Pacifica Marine allege one.  The Commissioner invited participation in an appeal that had stayed Benchoff's ability to acquire the leases to eleven tracts of land, and which, contrary to Pacifica Marine's arguments in its reply brief, plainly involved more issues than "DNR losing its own records after the Auction."  But Benchoff and Pacifica Marine never submitted an affidavit or other evidence or requested a hearing before the Commissioner, including during the nine months between the superior court's remand to the Commissioner for a decision on the merits and the Commissioner's Decision on Remand.

Pacifica Marine has not identified any case in which this court has required a superior court to hold a trial de novo in the absence of a due process violation at the agency level.  The two layers of deference in this case — the superior court's deference to the record the Commissioner used and this court's deference to the superior court's

_____

[37]     *Keiner v. City of Anchorage*, 378 P.2d 406, 409 (Alaska 1963); *see also Treacy v. Municipality of Anchorage*, 91 P.3d 252, 270 (Alaska 2004) ("A trial de novo is particularly appropriate when certain issues are not within the expertise of the reviewing body or when the present record is inadequate. A trial de novo is also appropriate when the procedures of the administrative body are inadequate, for instance when they do not provide due process, when the agency was biased, or when the agency excluded important evidence.  Normally, however, a court will review an agency decision on the record." (footnotes omitted)).

[38]     239 P.3d 692, 701 (Alaska 2010).

discretion in granting a trial de novo — demonstrate that the superior court's refusal to grant a trial de novo was not an abuse of discretion.

## V.   CONCLUSION

We AFFIRM the superior court's decision to affirm the Commissioner's decision.