*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STEVEN C. LEVI, | ) | |
| | ) | Supreme Court No. S-16876 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-17-05944 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF LABOR AND WORKFORCE | ) | No. 7315 – November 16, 2018 |
| DEVELOPMENT, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Steven C. Levi, pro se, Anchorage, Appellant. Kimberly Rodgers, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

BOLGER, Chief Justice.

## I.     INTRODUCTION

Steven Levi appeals from a superior court decision affirming an order of the Department of Labor and Workforce Development. The order required him to repay several months of unemployment insurance benefits plus interest and penalties because he under-reported his weekly income while receiving benefits. Based on a Department

handbook, Levi argues that he was not required to report his wages unless he earned more than $50 per day. But Levi's reading of the handbook is unreasonable; in any event, the governing statute requires a reduction in benefits whenever a claimant's wages are more than $50 per week. Levi makes other arguments, but none of them have any merit. We therefore affirm the superior court's decision.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Steven Levi received unemployment insurance benefits intermittently between 2010 and 2014. At the same time he was receiving these benefits, Levi earned wages through three different jobs. First Levi periodically worked part-time for American Education Complex as an adjunct faculty member. He taught when there were sufficient students enrolled to fill the class and was paid at the end of the class based on the number of students enrolled. Second in 2011 Levi worked for Embry Riddle Aeronautical University as an adjunct faculty member. He taught classes on an as-needed basis and was paid twice per month. Finally in spring 2012 Levi worked as a substitute teacher for the Anchorage School District on an as-needed basis.

Levi filed a required biweekly certification form when he was receiving unemployment benefits. The Department mailed Levi a handbook that contained instructions for completing the certification form. The handbook in effect during the relevant time period instructs that a claimant must report "all work and earnings . . . on . . . certifications" even if the claimant was "only working part-time or temporarily." With regard to wages, the handbook specifically requires the claimant to report all "wages earned each week, Sunday through Saturday, whether or not you have actually been paid." The handbook further advises that a claimant "can earn $50 without reducing [the] benefit check," but the claimant nevertheless "must report the wages." Benefits are "reduced 75 cents for each dollar . . . earn[ed] over $50."

In addition to these instructions, the handbook also contains information regarding the consequences of being overpaid benefits. It states that a claimant would be required to "repay all benefits that are overpaid." It also lists "severe penalties for attempting to collect benefits to which [the claimant] [is] not entitled," including a penalty of 50% of any overpaid benefits obtained through fraud, withholding of future benefits, and criminal prosecution for fraud. It defines "fraud" as "knowingly making a false statement, misrepresenting a material fact or withholding information to obtain benefits."

Levi completed the required biweekly certification form online. Among other questions, the form asks: "Did you work for any employers [during the weeks at issue]?" If the claimant answers "yes," another form appears prompting the claimant to enter the number of hours worked and wages earned for each week in which the claimant worked. Despite being employed part-time during some of the time he was collecting benefits, Levi usually answered "no" to the question and therefore was not prompted to report his wages. In total Levi reported having no employer and thus no wages for more than 50 weeks in which he actually did work and did earn wages, and in nine of those unreported weeks Levi earned over $50 per day.[1]

In October 2011, in response to an automated report required of employers, the Department mailed an audit form to American Education Complex and Embry Riddle

---

[1] Levi did report wages from the Anchorage School District for five weeks in 2012, and his benefits were either denied or reduced as a result. But for at least one of those weeks, Levi under-reported his wages. Another week, Levi did not report his Anchorage School District wages but was not overpaid because his benefits for that week were denied on the basis that he reported starting work for the Anchorage School District that week yet had not reported any wages. And for one week in 2011, Levi contacted the Department (after submitting the form with no reported wages for the week) and reported $1,000 in weekly earnings from an unspecified source.

requesting details about Levi's hours and wages. On December 7, 2011, the Department received American Education Complex's completed form and inputted the information into the Department's database.[2] The case was assigned that same day to the Department investigator who input the information. However, shortly thereafter, the Department changed its method of assigning cases to investigators, and for some unknown reason, Levi's case "just fell through the cracks." There is no indication that the originally assigned investigator took any further action with regard to Levi's file after inputting the information on December 7.

The Department obtained additional audit forms from the Anchorage School District in May 2012 and from American Education Complex in April 2013 and September 2014, which also indicated potential overpayments to Levi. However, because the first case had already been assigned to an investigator, these subsequent cases were assigned to the same investigator, and no further action was taken.

## B.    Proceedings

### 1.    Department determination

The investigator assigned to Levi's file retired in late 2016, and a new investigator took over his assignments approximately a month later, in November. The new investigator reviewed Levi's file and discovered the four audit forms suggesting that Levi had been overpaid benefits. On December 6 the investigator mailed a letter to Levi notifying him that the audit forms indicated he had failed to report hours and earnings and may have been improperly paid benefits. In response, Levi called the investigator two times the next day. During those conversations Levi explained that even though he worked part-time as a professor, he was often not sure whether or how much he would

---

[2]    Apparently though Embry Riddle also returned the audit form around this time, the information was not entered into the Department's system.

be paid for a course until several weeks after the course had started because his earnings were based on the number of students enrolled. Levi asserted that he had previously been told by a Department employee that he did not need to report wages he earned until he was actually paid. But Levi repeatedly expressed his agreement with the Department's records of his hours and earnings and acknowledged that he had improperly failed to report some of those earnings and owed the Department money as a result.

Levi sent the Department a letter two days later that offered a different account. In this letter he claimed that he had contacted the Department sometime in 2010 to ask how he should report his earnings on the certification form. He contended he was told that he did not need to report earnings unless they exceeded $50 per day (i.e., $350 per week). Levi also quoted the portion of the handbook governing hour and wage reporting and contended that this provision was ambiguous as to whether the time frame for the allowable $50 earnings was daily or weekly. And in a final letter to the Department, Levi questioned whether the Department's audit of his claims was timely given that the Department commenced its investigation in 2011.

The Department sent Levi a notice of determination on December 21, 2016. The determination concluded that Levi had failed to report or had "grossly under-reported" his work and earnings for the weeks at issue spanning 2010-2014. It thus required him to repay those benefits. The determination further found that fraud had been established for those weeks, and as a result, Levi was barred from receiving future benefits for 52 weeks and was required to pay a penalty. The investigator's file notes explain that she found fraud based on Levi's mischaracterization of the handbook provision on hour and wage reporting as well as his shifting explanations for his failure to accurately report his hours and wages on the certification forms. In total the Division claimed that Levi owed $25,122.

## 2. Department appeal

Levi appealed[3] the determination to the Department's appeal tribunal; a hearing at which Levi and the Department investigator testified was held before a hearing officer. The hearing officer issued a decision affirming the investigator's determination. The decision first noted that overpayment of benefits was established because Levi "d[id] not dispute any of the dates or hours of work or earnings information provided to the Division by his employers." And it disagreed with Levi's interpretation of the reporting requirements in the handbook, concluding that the only reasonable interpretation was that the $50 figure was per week, not per day. Moreover, even under Levi's interpretation, he did not report wages for nine continuous weeks in which he earned more than $50 per day (i.e., more than $350 per week).

The decision next affirmed the Department's fraud finding on the basis that it was "implausible" that Levi had received incorrect instructions from a Department employee and, even so, his reporting was inaccurate under his proffered interpretation of the handbook requirements. Finally the decision rejected Levi's timeliness argument, concluding that the determination was issued within the applicable six-year statute of limitations, although it was "unfortunate" it had been left unaddressed for several years.

Levi appealed the hearing officer's decision to the Department commissioner. His appeal notice again disputed the Department's interpretation of the handbook reporting requirements and alleged that the determination fell outside the statute of limitations. It also claimed that the hearing officer had a conflict of interest based on an alleged mortgage fraud scheme perpetrated by Wells Fargo.[4] Levi alleged

---

[3] At all points in the proceedings — and on appeal — Levi has represented himself.

[4] In her decision on Levi's subsequent motion to recuse, Superior Court

(continued...)

that the hearing officer — along with the Attorney General — had obtained a mortgage from Wells Fargo through the scheme, and thus Levi was entitled to another hearing before a new officer.  The commissioner exercised her discretion to deny the appeal.

### 3.    Superior court appeal

Levi next appealed the determination to the superior court.  On April 12 the court issued notice that the case was assigned to Superior Court Judge Frank A. Pfiffner. On April 25 Levi moved for Judge Pfiffner to recuse himself based on the same conflict of interest he alleged with regard to the hearing officer — the gift mortgage scheme. Levi attached to the motion public records relating to Judge Pfiffner's Wells Fargo mortgage.  He suggested that because Judge Pfiffner had been issued a deed of reconveyance, he was a participant in the scheme.

The superior court denied the motion on the basis that it "ha[d] no merit." Judge Pfiffner explained that his possession of a "deed[] of trust on real property where the lender coincidentally happens to be Wells Fargo has no conceivable significance" because Wells Fargo was not a party in the case and had no relationship to it.  He characterized Levi's mortgage fraud contentions as "frivolous" and explained that there was nothing nefarious about the deed of reconveyance that he had received — rather it

---

**4**    (...continued)
Judge Jennifer K. Wells cogently explained the alleged scheme as follows: "The scheme involves what Mr. Levi refers to as 'gift mortgages,' in which a mortgage debt is entirely forgiven by Wells Fargo but the tax benefits of making mortgage payments are somehow retained.  Therefore, Mr. Levi believes any person who has a Wells Fargo mortgage, that he determines to be a gift mortgage, is aligned against him because he has become a 'whistle-blower' to the Internal Revenue Service regarding the gift mortgage scheme." Levi alleges that this scheme has been targeted at state employees "who had the power to have [Levi] removed from positions of employment."  According to Levi, in total he has discovered $100 million in mortgage gifts by Wells Fargo and has reported this scheme to various federal agencies, including the FBI and the IRS, where he has "every reason to believe that an investigation is ongoing."

was necessary when he refinanced his home. Judge Pfiffner noted in conclusion that the superior court had "an obligation not to disqualify itself where there is no valid reason for doing so." Because Levi had failed to allege any violation of the relevant ethical rules by the superior court, the motion to recuse was denied.

The chief justice issued an order assigning review of Judge Pfiffner's denial to Judge Wells, who affirmed the denial.[5] She reasoned that the simple fact that Judge Pfiffner had a Wells Fargo mortgage "is not enough" to show that he had a direct financial interest in the case. Therefore there was no basis for recusal. Levi then moved for reassignment of the review to another judge on the basis that Judge Wells also had received a gift mortgage and thus had the same conflict of interest. The superior court denied the motion.

In addition to the motion for recusal and related filings, Levi also requested discovery and admissions from the Department relating to the alleged mortgage scheme. In two separate motions Levi sought, among other things, all state correspondence referring to himself, Wells Fargo, or home mortgages involving a deed of reconveyance. He also sought admissions from various superior court judges as well as individuals in the attorney general's office that they "paid income taxes on any, all or every Deed of Reconveyance received." The Department moved to strike both motions as outside of the scope of the administrative appeal, which was limited to the agency record. The superior court granted the motions to strike.

Finally Levi moved for a jury trial in the superior court, which the State opposed. The superior court denied the motion. Having resolved these procedural

---

[5]     *See* AS 22.20.020(c) (requiring that, in the event a judge denies a motion to recuse, denial is reviewed by a judge assigned "by the presiding judge of the next higher level of courts").

issues, on October 9, 2017, the superior court issued an order affirming the Department's overpayment determination.

Levi appeals the superior court's decision. He also appeals the court's denial of the recusal motion, its granting of the Department's motions to strike the two discovery motions, and its denial of the motion for a jury trial.

## III.    STANDARD OF REVIEW

In administrative appeals "[w]here the superior court is acting as an intermediate court of appeals, we directly review the agency decision" rather than the superior court's decision.[6] As relevant here, we apply two standards of review when reviewing decisions of an administrative agency, depending on the issue under review. We apply reasonable basis review to questions of law involving agency expertise.[7] In doing so, "we 'seek to determine whether the agency's decision is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination.' "[8] And we exercise our independent judgement when reviewing questions of law that do not involve agency expertise, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[9]

---

[6]     *Alaska Police Standards Council v. Parcell*, 348 P.3d 882, 886 (Alaska 2015).

[7]     *Pacifica Marine, Inc. v. Solomon Gold, Inc.*, 356 P.3d 780, 788 (Alaska 2015).

[8]     *Id.* (quoting *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 299 (Alaska 2014)).

[9]     *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 72-73 (Alaska 2013).

We review for abuse of discretion rulings on a discovery motion[10] and a motion to recuse.[11] We will not overturn for abuse of discretion a trial court's ruling on such motions "unless it is plain that a fair-minded person could not rationally come to [the court's] conclusion on the basis of the known facts."[12] The "[d]enial of a motion for a jury trial raises a question of law that we review de novo,"[13] as does the proper application of a statute of limitations.[14]

## IV. DISCUSSION

### A. The Department's Interpretation Of The Earnings Deduction Statute Is Reasonable.

Levi argues on appeal that the handbook's summary of the hour and wage requirements for benefits is ambiguous, and he reasonably interpreted it to require reporting only wages that exceeded $50 per day.[15] He seems to concede that the earnings deduction statute itself, AS 23.20.360, is clear that the figure is actually $50 per *week*,

---

[10]     *Lindbo v. Colaska, Inc.*, 414 P.3d 646, 650 (Alaska 2018).

[11]     *Timothy W. v. Julia M.*, 403 P.3d 1095, 1100 (Alaska 2017).

[12]     *Id.* (quoting *Hanson v. Hanson*, 36 P.3d 1181, 1183 (Alaska 2001)).

[13]     *Alyssa B. v. State, Dep't of Health & Soc. Servs.*, 123 P.3d 646, 648 (Alaska 2005).

[14]     *Jackson v. Municipality of Anchorage*, 375 P.3d 1166, 1170 (Alaska 2016).

[15]     Levi does not challenge the accuracy of the Department's hour and wage data on appeal. He therefore does not appeal the superior court's conclusion that the Department's determination that Levi failed to report hour and wages was supported by substantial evidence. Nor does he challenge the Department's determination that his misreporting constituted fraud.

but argues that the handbook should control because he was "not required" to read the statute.[16]

Alaska Statute 23.20.360 governs how wages affect a claimant's unemployment insurance benefits. It provides that a claimant's weekly benefits are reduced by 75% of the claimant's weekly wages that exceed $50: "The amount of benefits . . . payable to an insured worker for a week of unemployment shall be reduced by 75 percent of the wages payable to the insured worker for that week that are in excess of $50. However, the amount of benefits may not be reduced below zero."[17] The statute is thus clear that the $50 figure is based on a claimant's total *weekly* — not daily — earnings.

The Department's unemployment benefits handbook includes a section entitled "Work, Wages, Income" summarizing a claimant's statutory obligation to report

---

[16] The Department argues that Levi waived this argument by failing to raise it before the Department or the superior court. While it is true that on appeal to this court Levi first conceded that AS 23.20.360 requires claimants to report wages of more than $50 per *week*, Levi consistently argued before both the Department and the superior court that the handbook did not require reduction of his benefits unless he earned over $50 a day. Keeping in mind this court's "policy against finding unintended waiver of claims in technically defective pleadings filed by" self-represented litigants, to the extent that Levi's argument on appeal is consistent with his arguments before the Department and the superior court, we do not consider it waived. *Mitchell v. Mitchell*, 370 P.3d 1070, 1083 (Alaska 2016) (quoting *DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005)). His briefings made evident to the court his position that the handbook is the ultimate authority for unemployment benefit reporting requirements and provided the Department with fair opportunity to reply to this argument. *See id.* ("[W]e consider a claim to be raised when the 'briefing was such that [the court] could discern [the party's] legal arguments and [the opposing party] could reply to them.' " (second and third alterations in original) (quoting *Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004))).

[17] AS 23.20.360.

hours worked and wages. It first states that "all work and earnings must be reported" on a claimant's biweekly certification form. A claimant "must report . . . gross wages earned each week, Sunday through Saturday. . . ." The handbook explains that a claimant "can earn $50 without reducing [the] benefit check" but again emphasizes that the claimant "must report the wages." If a claimant earns "over $50," the "benefit check will be reduced by 75 cents for each dollar . . . over $50." If a claimant has "gross wages equal to or more than 1⅓ times [the] weekly benefit amount, plus $50, [the claimant] will not receive a benefit check for that week."

Even assuming there is a conflict between the handbook and the statute, the handbook does not control over the statute. The handbook contains an introduction explicitly stating that the information in the handbook "is based upon, but does not replace, [AS 23.20 and associated regulations]." Levi was thus on notice that he should consult the statute in order to interpret the reporting requirements. And we have previously held that similar policy statements not promulgated as regulations do not carry the force of law and are not binding.[18] As Levi concedes, the statute clearly limits unemployment benefits for claimants whose earnings "*for that week* . . . are in excess of $50."[19]

Regardless, Levi's interpretation of the handbook provision is unreasonable. The entirety of the handbook's reporting requirement section is framed in terms of weekly hours and earning. A claimant files for benefits by the week,[20] the

---

[18]    *See State v. Weidner*, 684 P.2d 103, 109 (Alaska 1984).

[19]    AS 23.20.360 (emphasis added).

[20]    AS 23.20.375.

benefit amount is a specified weekly amount,[21] and a claimant's unemployment status is evaluated by the week.[22] And the same section containing the $50 figure instructs claimants to report all wages "earned *each week*, Sunday through Saturday," and it refers to the claimant's "*weekly* benefit amount." (Emphases added.) Nowhere does the handbook refer to a *daily* time frame. The certification form additionally frames all questions in terms of the week.

In sum the statute controls over the handbook, and the statute is clear that the $50 figure is a weekly figure. And nothing in the handbook conflicts with the Department's interpretation of the wage reporting provision as having a weekly time frame.

## B.     The Department's Determination Falls Within The Statute Of Limitations And Is Not Otherwise Barred For Untimeliness.

Levi argues next that even if he failed to comply with the hour and wage reporting requirements, the statute of limitations expired before the Department issued its determination of overpayment. Relatedly he also contends that the Department failed to satisfy the separate statutory requirement of a prompt determination.

If the Department's determination of overpayment was a legal "action," then AS 09.10.120(a) provides the statute of limitations. It requires that "an action brought in the name of or for the benefit of the state . . . may be commenced only within

---

[21]     AS 23.20.350(d).

[22]     AS 23.20.505(a), (d).

-13-                                    7315

six years after the date of accrual of the cause of action."[23]  In cases of fraud, the cause of action accrues "from the time of discovery by the aggrieved party of the facts constituting the fraud."[24]

The Department learned of the facts constituting Levi's fraud no earlier than December 7, 2011, when it received the first audit form from one of Levi's employers and input this information into its database.  Before that date, the Department had no basis for suspecting that Levi's reported hour and wage information on his certification forms did not match the information from his employers.  And Levi does not provide an alternative date of accrual; he appears to concede that the action accrued in December 2011.  In order to comply with the six-year statute of limitations, the Department must have issued its determination by December 7, 2017.  Here the Department issued its determination on December 21, 2016.  It was therefore not barred by the statute of limitations.

Arguing to the contrary, Levi relies on the statute of limitations set forth in three other statutes.  Levi first points to AS 09.10.053, which applies to "an action upon a contract or liability" and sets a three-year statute of limitations.  But this action does not arise under a contract; rather it arises under the statutory unemployment benefits scheme.  Levi also relies on AS 45.04.111, which also sets a three-year statute of limitations.  But as the superior court noted, this provision is applicable only to actions arising under the Uniform Commercial Code Bank Deposits and Collection Act.[25]  Finally Levi points to AS 09.10.040(a), which sets a ten-year statute of limitations.  But this provision applies only to "an action upon a judgment or decree of a court of the

---

[23]     AS 09.10.120(a).

[24]     *Id.*

[25]     AS 45.04.111.

United States, or of a state or territory within the United States."[26] The instant action is not based on any such judgment, and regardless, ten years has not elapsed since the Department's cause of action against Levi accrued. The statute of limitations in AS 09.10.120(a) is the applicable statute of limitations for a determination of overpayment because such a determination benefits the State by recouping overpaid benefits and collecting a penalty, which are deposited into the State's unemployment trust fund account.[27]

Levi finally seems to argue that the statute governing unemployment insurance benefits imposes a promptness requirement on the Department that is distinct from the statute of limitations requirement. Alaska Statute 23.20.390(b) requires the Department, when considering whether a claimant has been overpaid benefits and is liable for repayment, to "promptly prepare and deliver or mail . . . a notice of determination of liability." Levi argues that, because the Department "waited five . . . years" after receiving the first audit form to contact him regarding the discrepancies, it did not comply with this requirement.

This argument is unavailing because AS 23.20.390(b) does not apply to the investigatory stage of the Department's overpayment determination process, but rather to the notification stage. In other words the provision does not limit the length of a Department *investigation* into whether a claimant has been overpaid. Rather it requires that once a determination of overpayment has been made, the Department must promptly notify the claimant of the determination. Here the Department investigator began reviewing the case no earlier than November 2016, first notified Levi of the possibility

---

[26] AS 09.10.040(a).

[27] AS 23.20.390(f).

of overpayment on December 6, and mailed the notice of determination on December 21. This satisfies the prompt notification requirement in AS 23.20.390(b).

C.    **The Superior Court Did Not Abuse Its Discretion By Denying The Recusal Motion.**

Levi next argues that the superior court abused its discretion by denying his motion for recusal. Levi moved for Judge Pfiffner to recuse himself based on a conflict of interest arising from the alleged mortgage fraud scheme.

As an initial matter, to the extent Levi relies on his peremptory challenge right, this argument fails because Levi did not timely invoke this right.[28] Alaska Statute 22.20.022 grants each party in a superior court proceeding the ability to change judges once as a matter of right. A party wishing to exercise this right must file a notice of change of judge within five days of receiving notice of judicial assignment.[29] But Levi filed his motion nearly two weeks after he received notice that the case had been assigned to Judge Pfiffner. Therefore he was not entitled to change judges as a matter of right.

Turning to recusal, Levi failed to provide any evidence indicating bias or partiality on the part of Judge Pfiffner. The only evidence he offered with his motion to recuse were public records showing that Judge Pfiffner had been issued a Wells Fargo mortgage and deed of reconveyance. With other motions Levi provided copies of letters to various federal agencies alleging a mortgage fraud scheme involving Wells Fargo. But these routine financial transactions with Wells Fargo do not indicate participation

---

[28]    Levi's brief cites "Court Rule 43" in support of his recusal argument. Alaska Civil Rule 43 was rescinded in 1979. ALASKA RULES OF COURT: OFFICIAL VERSION 103 (2018). We interpret Levi to be citing Civil Rule 42, which contains the peremptory challenge right. Alaska R. Civ. P. 42(c).

[29]    AS 22.20.022(c); Alaska R. Civ. P. 42(c)(3).

in any improper scheme. As Judge Pfiffner explained, he received a deed of reconveyance not as part of a free mortgage scheme but rather because he refinanced his mortgage. Levi does not rebut Judge Pfiffner's wholly reasonable explanation. Therefore Levi's contentions of bias are entirely unsubstantiated by any specific evidence, and the superior court did not abuse its discretion in denying his motion for recusal.[30]

### D. The Superior Court Did Not Err By Denying The Motion For A Jury Trial.

Levi challenges the superior court's denial of his motion for a jury trial.[31] The Alaska Constitution provides the right to a jury trial "[i]n civil cases . . . to the same extent as [the right] existed at common law."[32] But this case is not a civil case; rather it is an administrative appeal seeking review of the Department's determination.[33] Specifically here Levi's appeal from the Department's determination is authorized by AS 23.20.445, which permits superior court review of the decision of the Department's appeal tribunal. We have recognized that there is no right to a jury trial in such an appeal to the superior court because administrative appeals arise under statute, not common law.[34] Moreover the legislature has set forth procedures for such appeals in

---

[30] *See Wright v. Anding*, 390 P.3d 1162, 1170 (Alaska 2017).

[31] Levi also claims that the superior court never addressed this motion, but the superior court issued an order clearly denying it.

[32] Alaska Const. art. I, § 16. For this right to apply, "the amount in controversy [must] exceed[] two hundred and fifty dollars." *Id.*

[33] *See Carlson v. Renkes*, 113 P.3d 638, 641 (Alaska 2005).

[34] *See Diedrich v. City of Ketchikan*, 805 P.2d 362, 366-67 (Alaska 1991) (citing *Benson v. City of Nenana*, 725 P.2d 490, 491 (Alaska 1986)); *see also Conoco,*
(continued...)

AS 22.10.020(d),[35] and they do not provide for a jury trial.

Levi counters that this case is not an administrative appeal because the administrative portion "ended when the case went to court." But this argument miscomprehends the administrative appeal scheme. "A claim is functionally an administrative appeal if it requires the court to consider the propriety of an agency determination."[36] Here Levi's notice of appeal explicitly sought review of the Department's determination. Therefore Levi's appeal is correctly characterized as an administrative appeal, and the superior court did not err in denying the motion for a jury trial.

### E. The Superior Court Did Not Abuse Its Discretion By Striking The Discovery Motions.

As his final argument,[37] Levi contends that the superior court abused its

---

[34]  (...continued)
*Inc. v. State, Dep't of Nat. Res.*, No. S-4803, 1993 WL 13563632, at *3 (June 9, 1993) ("Because an administrative appeal is the proper vehicle for [appellants'] claims . . . the parties have no right to a jury trial.").

[35]  *See also* Alaska R. App. P. 601-12.

[36]  *Carlson*, 113 P.3d at 641 (quoting *Haynes v. State, Commercial Fisheries Entry Comm'n*, 746 P.2d 892, 893 (Alaska 1987)).

[37]  Levi also includes in his points on appeal the following question: "Did the [Department] take the alleged amount of overpayment out of [Levi's] pr[e]ceeding two (2) unemployment periods?" However Levi does not discuss this issue in the argument section of his brief. Therefore we deem it waived and do not consider it on appeal. *Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010) (applying the "well-established rule that issues not argued in opening appellate briefs are waived" equally to self-represented litigants). Moreover Levi did not raise this issue in the agency or superior court proceedings. *See Mullins v. Oates*, 179 P.3d 930, 941 n.31 (Alaska 2008) ("A party may not raise an issue for the first time on appeal." (alteration omitted) (quoting *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001))).

discretion by granting the State's motion to strike his discovery motions. Levi filed two discovery motions seeking a broad range of documents relating to the alleged gift mortgage scheme, including state correspondence and admissions from various judges and officials.

Levi's argument on this issue is premised on his contention that this is a civil case to which the broad rules of civil discovery apply.[38] However, as noted above, this action is not a civil case but rather an administrative appeal from the Department's determination. In such administrative appeals, the record generally consists solely of the agency record.[39] It was therefore not error to strike discovery motions that seek to supplement this record.

## V.    CONCLUSION

We AFFIRM the judgment of the superior court affirming the decision of the Department of Labor and Workforce Development.

---

[38]    *See* Alaska R. Civ. P. 26.

[39]    AS 22.10.020(d); Alaska R. App. P. 604(b)(1)(A).