*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOSEPH RIVERA,<br><br>               Appellant,<br><br>v.<br><br>STATE OF ALASKA, DEPARTMENT OF ADMINISTRATION, DIVISION OF MOTOR VEHICLES,<br><br>               Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Supreme Court No. S-18787<br><br>Superior Court No. 3AN-22-05012 CI<br><br>O P I N I O N<br><br>No. 7742 – February 7, 2025 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Peterson, Judge.

Appearances:  Joshua P. Fink, Law Offices of Joshua P. Fink, Anchorage, for Appellant.  Marshall W. Harbin, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before:  Maassen, Chief Justice, and Borghesan, Henderson, and Pate, Justices.  [Carney, Justice, not participating.]

PATE, Justice.

## I.    INTRODUCTION

New York authorities permanently revoked a man's driver's license after he was convicted of three alcohol-related driving offenses there.  The man later moved to Alaska but did not apply for an Alaska driver's license at that time.  Years later the

man was cited for driving with a revoked license in Alaska. He then sought to have New York reinstate his driving privileges. After New York denied his request, the man applied for an Alaska driver's license. The Alaska Department of Motor Vehicles (DMV) denied his application because his license was revoked in New York. In making this decision, the DMV relied on an Alaska statute that prevents it from issuing a license to anyone whose driving privileges are revoked in Alaska or any other jurisdiction.[1] The man appealed to the superior court, and the court affirmed the DMV's decision.

The man appeals from the superior court, arguing that the DMV misapplied Alaska's licensing statutes. Specifically, he argues that Alaska's licensing statutes conflict, and he asks us to resolve this perceived conflict in his favor. We hold that Alaska's driver's license statutes do not conflict. Instead, they operate in harmony. We affirm the superior court's judgment and uphold the DMV's decision to deny Rivera's application for a license.

## II.    FACTS AND PROCEEDINGS

New York revoked Joseph Rivera's driver's license after he was convicted in New York of three alcohol-related driving offenses that occurred between 2000 and 2010. Rivera moved to Alaska in 2011. Approximately nine years later, he was cited for driving with a revoked license near Anchorage. Rivera then sought to have his driving privileges reinstated, but New York's Driver Improvement Bureau denied two requests for reinstatement and a subsequent request for reconsideration. Rivera had an additional opportunity to appeal the denial of reconsideration, but he failed to pursue this appeal.

Rivera applied for an Alaska driver's license in 2021. The DMV denied Rivera's application because New York's revocation of his license was still in effect. Rivera requested and was granted an administrative hearing with the DMV to contest

---

[1]    AS 28.15.031(b)(1).

the denial. A hearing officer subsequently concluded that under Alaska law the DMV could not issue Rivera a license until New York restored Rivera's driving privileges.[2]

Rivera appealed the DMV decision to the superior court. He argued that a provision in the Interstate Driver License Compact allowed him to obtain driving privileges in Alaska despite the fact that New York had revoked his license.[3] Rivera also argued that the DMV impermissibly treated him differently than Alaska residents because some Alaska residents who have been convicted of three alcohol-related driving offenses remain eligible for a driver's license. Finally, he argued that the DMV's denial of his application constituted "manifest injustice" and therefore was unlawful. The superior court rejected these arguments and affirmed the DMV's decision to deny Rivera's application.

Rivera appeals.

## III. STANDARD OF REVIEW

"In administrative appeals '[w]here the superior court is acting as an intermediate court of appeals, we directly review the agency decision' rather than the superior court's decision."[4] We exercise our independent judgment when reviewing an agency's interpretation of a statute unless "the interpretation at issue implicates agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions."[5]

---

[2]    *See id.*

[3]    AS 28.37.150(2) (allowing applicant whose license has been revoked to "make application for a new license" one year after revocation "if permitted by law").

[4]    *Levi v. State, Dep't of Lab. & Workforce Dev.*, 433 P.3d 1137, 1143-44 (Alaska 2018) (quoting *Alaska Police Standards Council v. Parcell*, 348 P.3d 882, 886 (Alaska 2015)).

[5]    *Teck Am. Inc. v. Valhalla Mining, LLC*, 528 P.3d 30, 34 (Alaska 2023).

## IV.  DISCUSSION

The DMV properly denied Rivera's license application under AS 28.15.031(b)(1), a provision that prohibits the agency from issuing licenses to applicants who have out-of-state revocations in effect.  Alaska Statue 28.15.031(b)(1) and the Interstate Driver License Compact[6] operate in harmony.  The Compact, in large part, dictates the manner in which the DMV must consider an applicant's out-of-state driving record.  But when, as here, an applicant's license is revoked in another jurisdiction, Alaska's other licensing statutes, including AS 28.15.031(b)(1), control and bar the DMV from issuing the applicant an Alaska license.  Canons of statutory construction and legislative history support this reading.  And because the DMV properly applied Alaska's licensing statutes, its decision to deny Rivera a driver's license was lawful and did not create manifest injustice.

### A. Alaska's Licensing Statutes Create A Comprehensive Scheme Requiring The DMV To Consider Out-Of-State Driving Records In Its Licensing Decisions.

An applicant's out-of-state driving record has long been a factor in Alaska driver's licensing decisions.[7]  Alaska Statute 28.15.061(b) requires that an applicant for a driver's license must disclose whether they have been previously licensed in another jurisdiction and whether any previous license has been suspended or revoked.  Alaska Statute 28.15.061(c) allows the DMV to request an applicant's driving record from another jurisdiction and gives that record the "the same effect as if the record originated" in Alaska.  These provisions of law have not changed since their enactment in 1978.

---

[6]     AS 28.37.010-.199.

[7]     *See* Ch. 178, § 19, SLA 1978.

Alaska joined the Compact through legislative enactment in 1986.[8] The Compact is a multistate agreement that provides a system for sharing information and reciprocity of licensing requirements between party states.[9] The Compact reflects the party states' recognition of two basic principles. First, compliance with licensing requirements makes our roads safer.[10] Second, driving is inherently an interstate activity, and while the regulatory regime may change upon crossing from one state to another, the implications of unsafe driving do not.[11] The Compact addresses these concerns by ensuring that when a driver violates the law in one jurisdiction, other party states will consider that violation when making their own licensing decisions.[12]

To this end, the Compact requires the party states to share information about convictions related to the operation or use of motor vehicles in an effort to "make the reciprocal recognition of licenses to drive and eligibility for them more just and equitable."[13] Every party state must "report each conviction" that an applicant has within its jurisdiction, and a party state's licensing authority must treat the driver's convictions "as it would if the conduct had occurred" in the state where the applicant seeks a license.[14] Under the Compact, the reviewing authority "may not issue a license to drive to the applicant if . . . the applicant has held a license, but the license has been revoked by reason, in whole or in part, of a violation," and the revocation is still in

---

[8]     Ch. 60, § 18, SLA 1986.

[9]     *See* AS 28.37.010 (compact enactment). *See generally* AS 28.37.010-.199.

[10]     *See* AS 28.37.110(a)(1)-(3) (noting road safety is materially affected by degree of compliance with motor vehicle laws and "licensing is predicated on compliance").

[11]     *Cf.* AS 28.37.110 (Compact findings and policy statement).

[12]     *See* AS 28.37.140.

[13]     AS 28.37.110(b)(2).

[14]     AS 28.37.130-.140.

effect.[15] However, the Compact provides that an applicant may apply for a new license "if permitted by law" and "after the expiration of one year from the date the license was revoked."[16] The licensing authority may still refuse to issue the applicant a new license under the Compact "if, after investigation, the licensing authority determines that it will not be safe to grant to the person the privilege of driving."[17]

But the Compact's regulation of driver's licensing is not exclusive; it provides only a starting point for the requirements that a party state may impose on the issuance of licenses. In a section titled "Application of other state laws," the Compact provides that it "shall [not] be construed to affect the right of a party state to apply any of its other laws relating to licenses to drive to any person or circumstance."[18] And Alaska's legislature has, in fact, imposed additional requirements that the DMV must follow, requirements that go beyond those established by the Compact.[19]

The legislature's intention to provide additional licensing requirements beyond those required by the Compact is evidenced by its amendment of AS 28.15.031(b)(1). As originally enacted, AS 28.15.031(b)(1) barred the DMV from licensing anyone "whose license is suspended or revoked."[20] However, in 2007 the legislature amended AS 28.15.031(b)(1) to clarify that the DMV may not issue a license to anyone "whose license is suspended, revoked, canceled, or withdrawn in [Alaska] *or any other jurisdiction*, except as otherwise provided in this chapter."[21] We explain

---

[15]     AS 28.37.150.

[16]     AS 28.37.150(2).

[17]     *Id.*

[18]     AS 28.37.160.

[19]     *See generally* AS 28.15.010-.151.

[20]     Ch. 178, § 19, SLA 1978.

[21]     Ch. 23, § 4, SLA 2007.

below that this amendment reflects the legislature's intention that an outstanding revocation in any other jurisdiction will preclude licensure in Alaska.

**B.     Alaska Statute 28.15.031(b)(1) Precludes Rivera From Obtaining A License In Alaska.**

The DMV denied Rivera a driver's license under AS 28.15.031(b)(1). On appeal, Rivera asserts that AS 28.15.031(b)(1) conflicts with the Compact because AS 28.37.150(2) allows him to apply for a license after the expiration of one year from the date of his revocation. To resolve this perceived statutory conflict, Rivera invokes several canons of construction and points to a statement in legislative history in support of his argument that the legislature did not intend for AS 28.15.031(b)(1) to deprive people in his circumstances of the opportunity to obtain a license. Rivera argues that denying his application based on AS 28.15.031(b)(1) renders AS 28.37.150(2) superfluous, that the Compact addresses his circumstances in "a more detailed way" than AS 28.15.031(b)(1), and that by considering New York's decision to revoke Rivera's license, the DMV is ceding Alaska's sovereign authority to New York.

We disagree with Rivera. Alaska's licensing statutes are clear. And by their plain meaning, they prevent Rivera from obtaining an Alaska driver's license so long as his driving privileges are revoked in New York. The proper application of canons of construction supports this conclusion, and legislative history does not contradict it. Further, decisions from other states' courts interpreting similar statutes support the DMV's denial of Rivera's license application under AS 28.15.031(b)(1).

**1.     A plain reading of the Compact and AS 28.15.031(b)(1) shows that they are complementary, not conflicting.**

Rivera argues that the Compact's "clear language" in AS 28.37.150(2) allows the DMV to issue him a driver's license if, after an investigation and hearing, the DMV determines that it is safe to do so. Further, he contends that AS 28.37.150(2) is in conflict with AS 28.15.031(b)(1). In light of this perceived conflict, Rivera

believes that the DMV should ignore AS 28.15.031(b)(1) and, after an investigation and hearing, decide whether to grant him a license.

Statutory interpretation "begin[s] with the text and its plain meaning."[22] Our goal "is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[23] "We interpret a statute 'according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.' "[24]

The Compact provision that Rivera believes controls his case is AS 28.37.150(2), which is titled "Grounds requiring refusal to issue license." That provision states that an applicant whose out-of-state license is currently revoked "may" apply for an Alaska driver's license one year from the revocation date "if permitted by law."[25] The DMV may then license such an applicant if it finds that it would be "safe to grant the person the privilege of driving" on Alaska's roadways.[26] Rivera argues that the qualification "if permitted by law" in AS 28.37.150(2) refers narrowly "to a person making an *application*" for a license and thus does not recognize a limitation on DMV's authority to issue him a license. Accordingly, Rivera contends that the Compact

---

[22] *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019).

[23] *City of Valdez v. State*, 372 P.3d 240, 254 (Alaska 2016) (internal quotation marks omitted) (quoting *City of Fairbanks v. Amoco Chem. Co.*, 952 P.2d 1173, 1178 (Alaska 1998)).

[24] *Vandenberg v. State, Dep't of Health & Soc. Servs.*, 371 P.3d 602, 606 (Alaska 2016) (quoting *Louie v. BP Expl. (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014)).

[25] AS 28.37.150(2).

[26] *Id.*

requires the DMV to make a driver safety determination and then decide whether to issue him a license.[27]

Read in strict isolation, AS 28.37.150(2) might support Rivera's assertion. But we do not read statutory provisions in strict isolation. Rather, "[w]henever possible, [we] interpret each part or section of a statute with every other part or section, so as to create a harmonious whole."[28] Reading AS 28.37.150(2) in the context of the section as a whole indicates that "if permitted by law" refers to the DMV's consideration of a license application, not to a person's ability to file an application. The subsection only applies "[u]pon application for a license to drive,"[29] which indicates that an applicant must first apply for a license before the DMV can consider it under AS 28.37.150(2).[30]

Even accepting Rivera's premise that AS 28.37.150(2) does not itself recognize a limitation on the DMV's ability to license an applicant with a current revocation, other Compact provisions clearly do so. In fact, the Compact has an entire subsection governing its interaction with other state laws. Alaska Statute 28.37.160, titled "Application of other state laws," says that "nothing" in the Compact "shall be construed to affect" Alaska's right to apply "any of its other laws relating to licenses to drive to *any person or circumstance*" unless "expressly required by provisions" of the Compact.[31] Nothing in AS 28.37.150(2) indicates that it was intended to supersede other state laws. Instead, the section states that it applies "if permitted by law,"[32] which

---

**27** *See id.* ("[T]he licensing authority may refuse to issue a license to an applicant if, after investigation, the licensing authority determines that it will not be safe to grant [the license.]").

**28** *Rydwell v. Anchorage Sch. Dist.*, 864 P.2d 526, 528 (Alaska 1993).

**29** AS 28.37.150.

**30** *See id.*

**31** AS 28.37.160 (emphasis added).

**32** AS 28.37.150(2).

compels the opposite conclusion. By its plain meaning, the Compact provides that "other [licensing] laws" are controlling.[33]

Thus, under the Compact's plain terms, the DMV may consider Rivera's application "if permitted by law."[34] Alaska Statute 28.15.031(b)(1) bars any person "whose license is suspended, revoked, canceled, or withdrawn in this or any other jurisdiction" from receiving an Alaska license "except as provided in this chapter." Thus, Rivera may obtain an Alaska driver's license only if a statutory provision allows the DMV to issue him a license.[35] Chapter 28.15 of the Alaska Statutes includes several exceptions that allow courts or the DMV to grant limited driving privileges to individuals whose licenses have been revoked, but those exceptions only apply to an applicant whose license was revoked under Alaska law, not an applicant whose license was revoked under the laws of another jurisdiction.[36] These exceptions are thus inapplicable to Rivera because his license was revoked under the laws of New York.

Rivera claims that AS 28.15.061(b) "specifically permits individuals" with out-of-state revocations to apply for licenses. This is true. Alaska Statute

---

[33] *See* AS 28.37.150(2); AS 28.37.160.

[34] AS 28.37.150(2).

[35] *See* AS 28.15.031(b) (barring issuance to anyone "whose license is suspended, revoked, canceled, or withdrawn in this or any other jurisdiction *except as otherwise provided in this chapter*" (emphasis added)).

[36] *See e.g.*, AS 28.15.201(d) (allowing courts or DMV to grant limited driving privileges when revoking individual's license pursuant to AS 28.15.181 or AS 28.15.165, which prescribe mandatory revocation periods for certain convictions); AS 28.15.182(c) (allowing courts to consider request for limited license when revoking license for traffic violations causing death); AS 28.15.183(i), (f) (allowing person whose license was revoked for driving after consuming alcohol while under 21 or refusing to submit to chemical sobriety test to apply for limited driving privileges or reinstatement); AS 28.15.185(c) (allowing courts to restore license in certain circumstances during revocation period for delinquency by minor involving controlled substances or firearms).

28.15.061(b) requires applicants to disclose out-of-state revocations in their application for an Alaska license. But Rivera fails to offer a convincing explanation for how this supports his reading of the Compact. The ability to apply for a driver's license is not a guarantee of receiving one.

Rivera's argument that AS 28.15.061(c) supports his request for an investigation and a hearing similarly fails. That provision allows the DMV to request an applicant's out-of-state driving record.[37] When the DMV requests and receives such a record, it becomes a part of the applicant's Alaska driving record "with the same effect as if the record originated in" Alaska.[38] The plain text of AS 28.15.061(c) speaks to driving records generally — not to revocations. Rivera's claim that AS 28.15.061(c) must override AS 28.15.031(b)(1) is thus based on the incorrect premise that the two conflict. The two provisions concern different subject matter and do not conflict.

Rivera has failed to show any conflict between provisions of the Compact and Alaska's other licensing statutes. Rather, the legislature clearly stated in multiple provisions that where another Alaska law applies heightened licensing requirements that go beyond the starting point provided by the Compact, the DMV must apply the heightened requirements.[39] And Alaska law forbids the DMV from approving Rivera's application so long as the New York revocation is in effect.[40]

**2. Canons of statutory construction support a harmonious reading of Alaska's driver's licensing statutes.**

While the plain language of the Compact recognizes the application of other state laws, canons of construction also support the DMV's interpretation of AS 28.15.031(b)(1). "Canons of interpretation can also provide useful aids in our

---

[37] AS 28.15.061(c).

[38] *Id.*

[39] *See* AS 28.37.150(2); AS 28.37.160.

[40] AS 28.15.031(b)(1).

efforts to interpret a statute."[41] When interpreting legislation, we "must presume 'that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous.' "[42] Here, adopting Rivera's suggestion to ignore his out-of-state revocation would eviscerate AS 28.15.031(b)(1) by allowing the DMV to disregard the prohibition on licensing an individual with a current out-of-state revocation. Further, AS 28.15.031(b)(1), which dictates how the DMV must treat Rivera's application, is more specific than the Compact, which generally allows Rivera to apply "if permitted by law."[43] Finally, even assuming a conflict between the Compact and AS 28.15.031(b)(1), the latter was amended more than a decade after the former.[44] Thus the later amendment controls.[45]

Rivera points to AS 28.15.061(c), which requires the DMV to incorporate his out-of-state driving record into his Alaska record and give it "the same effect as if the record originated in [Alaska]." He argues that to resolve the purported conflict between that provision and AS 28.15.031(b)(1), we should interpret AS 28.15.061(c) as more specific and thus controlling.[46] Based on that interpretation, Rivera argues that

---

[41] *State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 (Alaska 2011). We presume the legislature is familiar with these canons. *See State v. Fyfe*, 370 P.3d 1092, 1100 & n.53 (Alaska 2016).

[42] *State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins. v. Progressive Cas. Ins. Co.*, 165 P.3d 624, 629 (Alaska 2007) (quoting *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999)).

[43] *See Griswold v. Homer Advisory Plan. Comm'n*, 484 P.3d 120, 127 (Alaska 2021); *In re Est. of Hutchinson*, 577 P.2d 1074, 1075 (Alaska 1978) (explaining interpretive principle that where two sections conflict, "the specific section will control over the general").

[44] *Compare* Ch. 60, § 18, SLA 1986, *with* Ch. 23, § 4, SLA 2007.

[45] *Griswold*, 484 P.3d at 127 (stating that where two statutes conflict, "the later in time controls over the earlier").

[46] *See In re Hutchinson*, 577 P.2d at 1075.

AS 28.15.061(c) allows him to obtain a license because his license might not have been revoked if the underlying conduct had occurred in Alaska.

As an initial matter, AS 28.15.061(c) is more general than AS 28.15.031(b)(1); it generally refers to an applicant's driving record.[47] Where a driver's record has resulted in suspension, revocation, cancellation, or withdrawal, such as in Rivera's case, the more specific restriction in AS 28.15.031(b)(1) applies. Further, the canon favoring application of a more specific statute only applies "if there is a conflict" between the two statutes; before applying the canon, "the two [statutes] should be harmonized, if possible."[48] Here, as we have explained above, the two statutes are easily harmonized because the Compact expressly provides that other state licensing laws are controlling.[49] Finally, Rivera's argument would require the DMV to ignore his revocation in New York, which is part of his record.[50]

In sum, the DMV denied Rivera's application because of his revocation, not his prior convictions. And the DMV would be required to deny his application under AS 28.15.031(b)(1), even if his privileges had been revoked in Alaska.[51] Therefore, the DMV properly applied AS 28.15.061(c) and treated Rivera's driving record as if it "originated in [Alaska]."[52] Alaska Statute 28.15.061(c) does not create an exception to AS 28.15.031(b)(1) that allows Rivera to obtain a license.

---

[47] *Compare* AS 28.15.061(c) (providing that out-of-state driving record may become part of applicant's Alaska record), *with* AS 28.15.031(b)(1) (barring issuance of license for applicant with current out-of-state suspension, revocation, cancellation, or withdrawal).

[48] *In re Hutchinson*, 577 P.2d at 1075.

[49] *See* Section IV.B.1 *supra*; AS 28.37.160.

[50] *See* AS 28.15.061(c).

[51] AS 28.15.031(b)(1) (barring DMV from licensing anyone "whose license is . . . revoked . . . *in this* or any other jurisdiction" (emphasis added)).

[52] AS 28.15.061(c).

### 3. Legislative history does not evince an intent contrary to the plain meaning of AS 28.15.031(b)(1).

Rivera argues that legislative commentary from the 2007 amendment to AS 28.15.031(b)(1) supports his position that Alaska "should not cede its authority to New York" by recognizing his out-of-state revocation.

"We give unambiguous statutory language its ordinary and common meaning," but we may also "look to legislative history as a guide to construing a statute's words."[53] We use legislative history as an interpretive aid with a "sliding-scale approach": "[T]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[54]

As enacted in 1978, AS 28.15.031(b)(1) prohibited the DMV from issuing a license to an individual "whose license is suspended or revoked."[55] In 2007 the legislature passed a suite of new licensing laws.[56] While most of these laws dealt with licensing requirements for commercial driver's licenses,[57] the legislature also amended AS 28.15.031(b)(1) by expanding the prohibition on issuing licenses to any person whose license is revoked "in this or any other jurisdiction."[58]

In a hearing on the amendments, one Senator expressed concern that "Alaska is giving away its sovereignty" by recognizing out-of-state revocations of

---

[53] *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 74 (Alaska 2013).

[54] *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019) (alteration in original) (first quoting *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012); and then quoting *State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016)).

[55] Ch. 178, § 19, SLA 1978.

[56] *See* Ch. 23, §§ 1-34, SLA 2007.

[57] *See id.* §§ 3, 5-6, 9, 15-26, 29, 31.

[58] *Id.* § 4.

commercial driver's licenses.[59]  In Rivera's view, the Senator's comments indicate that the 2007 amendment "only clarified that DMV was to recognize out-of-state revocations to obtain federal funding as to commercial driving licenses."  Rivera accurately restates the Senator's comments but fails to provide the proper context in which those statements were made.  The Senator was not commenting on the amendment to AS 28.15.031(b)(1), which governs regular licenses.  Rather, the Senator was referring to an amendment to AS 28.33.140(a), which provided that a person may be disqualified from obtaining a commercial driver's license due to adverse administrative actions in other jurisdictions.[60]

Regardless, Rivera's concerns for Alaska's sovereignty are unfounded. The DMV did not apply New York law to Rivera's driving convictions; it applied Alaska law to his license revocation.  And it denied Rivera's application because of AS 28.15.031(b)(1), not the Compact.  The laws enacted by the Alaska legislature — and not New York's licensing rules — control the DMV's decision.  Thus, Alaska's sovereignty has been exercised, not impinged.

### 4.     The DMV's denial under AS 28.15.031(b)(1) is consistent with precedent from other jurisdictions.

In other states that are parties to the Compact, courts have consistently held that it is proper for a licensing authority to deny a license to an applicant with an out-of-state revocation when there is a separate statute that prevents issuance.[61]  In *Gwin v. Motor Vehicle Administration*, the Maryland Court of Appeals determined that a Maryland law that barred licensing drivers "[d]uring any period for which the

---

[59]    Minutes, S. Transp. Standing Comm. Hearing on C.S.H.B. 126 (JUD), 25th Leg., 1st Sess. 8-10 (April 26, 2007) (comments of Sen. Bill Wielechowski).

[60]    *Id.*; *see also* AS 28.33.140(a).

[61]    *See, e.g.*, Md. Code Ann., Transp. § 16-103.1 (West 2009) (prohibiting issuance of license to applicant "[d]uring any period for which the individual's license to drive is revoked, suspended, refused, or canceled in this or any other state").

individual's license to drive is revoked . . . in [Maryland] or any other state" did not conflict with the Compact.[62] The applicant's license had been revoked in Florida, so the court held that the Motor Vehicle Administration had properly denied the petitioner's license application based on this provision.[63] Courts in Illinois, Oklahoma, and Pennsylvania have reached the same result based on similar reasoning.[64]

Conversely, in party states that do not separately bar the state's licensing authority from granting driving privileges to applicants with out-of-state revocations, such applicants have been able to obtain a license under the Compact. For example, in *Ex Parte Welch*, the Alabama Supreme Court determined the Compact allowed the state to issue a license to an applicant whose Florida license had been revoked.[65] Alabama had a statute that barred issuance to "[a]ny person whose driving right or privilege has been revoked."[66] However, this provision — unlike AS 28.15.031(b)(1) — did not

---

[62]   869 A.2d 822, 836 (Md. 2005).

[63]   *Id.* at 825, 836.

[64]   *Girard v. White*, 826 N.E.2d 517, 521 (Ill. App. 2005) (holding Compact is "discretionary" and "allow[s] the issuance of a driver's license when the application is consistent with relevant Illinois law" (citing 625 Ill. Comp. Stat. 5/6-208)); *Tull v. Comm'r of Dep't of Pub. Safety*, 176 P.3d 1227, 1230-31 (Okla. Civ. App. 2007) (holding Compact did not conflict with Oklahoma law that "specifically recognizes extraterritorial revocations" and that Compact "was not intended to supercede [sic] application of Oklahoma's other vehicle laws," so licensing prohibition would prevail even if it did conflict with Compact (citing 47 Okla. Stat. tit. 6, § 103)); *Roop v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 6 A.3d 1, 1, 5 (Pa. Commw. 2010) (holding "it is clear that the Driver's License Compact does not create an exception to a state's statute which provides a blanket prohibition to the issuance of a driver's license, it merely provides for an exception if a state's law permits one" and determining "it is just as clear that" Pennsylvania law barring issuance to any person whose driving privileges have been revoked in any state barred issuance to petitioner whose license was revoked in Florida (citing 75 Pa. Cons. Stat. § 1503)).

[65]   519 So. 2d 517, 519 (Ala. 1987).

[66]   *Id.*

explicitly incorporate out-of-state revocations, so it did not prevent Alabama's licensing authority from issuing the applicant a license.[67]

Alaska specifically bars licensing anyone whose license is revoked "in this or any other jurisdiction."[68] Further, Alaska law contains no exception that applies to Rivera's circumstances. Consequently, the DMV's decision to deny Rivera a license under AS 28.15.031(b)(1) accords with precedent from states that have adopted a similar licensing regime.

## C. Rivera Waived His Equal Protection And Lenity Arguments.

Rivera argues that the DMV impermissibly "treated [him] differently from similarly-situated Alaskans" by giving effect to his New York revocation. Although the superior court construed this argument in terms of due process, Rivera's claim is effectively an assertion that he was denied equal protection. Specifically, he suggests that the revocation period for his underlying offenses may have been different if his conduct had occurred in Alaska.[69] In its analysis the superior court compared Rivera's treatment to that of other people who move to Alaska with out-of-state revocations. Rivera contends that this was error and that the superior court should have compared his treatment with that of Alaskans generally. Additionally, Rivera argues that his license denial under AS 28.15.031(b)(1) is effectively a penalty, and under the rule of lenity, he is entitled to the least restrictive interpretation of Alaska's licensing statutes. Regardless, we do not reach either issue.

Rivera's opening brief cites no authority supporting the proposition that the DMV's decision denies him equal protection of the law. Instead Rivera speculates

---

[67]    *Id.*

[68]    *Compare id.*, *with* AS 28.15.031(b)(1).

[69]    *See Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1277 (Alaska 2013) (explaining that we "ordinarily review different legal treatment under the equal protection clause"); *see also* Alaska Const. art. I, § 1.

about the legal consequences his driving convictions would have had if they had occurred in Alaska. "We consider arguments that are given cursory treatment without any support to be waived."[70] Rivera also fails to raise his rule-of-lenity argument in his opening brief. Instead, he raises it for the first time in his reply. It is a well-established rule that "an issue raised for the first time in a reply brief is deemed to have been waived."[71] Consequently, Rivera has waived both of these arguments, and we do not consider them.

### D. The DMV's Decision Does Not Create Manifest Injustice.

Rivera argues that the DMV's "fail[ure] to fulfill its statutory duty" to "treat [his] out-of-state driving record as though it had originated in Alaska" has resulted in manifest injustice. In its order denying Rivera's application, the DMV noted that it cannot overturn an out-of-state license action. Thus, if Rivera wanted to resolve the underlying revocation barring his Alaska application, the DMV was correct in concluding that he must do so through New York's licensing agency. On appeal, Rivera characterizes that option as "illusory" and "chasing a mirage." Given the significant hurdles he faces in restoring his New York license and, by proxy, receiving an Alaska license, Rivera argues that he is "stuck in a legal limbo," which he believes is manifestly unjust.

We have previously noted that despite "the absence of any express grant of authority to reconsider" a final order, "the DMV may well have inherent modification power when enforcement of the original order would result in manifest injustice."[72]

---

**70** *Williams Alaska Petroleum, Inc. v. State*, 529 P.3d 1160, 1197 (Alaska 2023); *see also* Alaska R. App. P. 212(c).

**71** *Maines v. Kenworth Alaska, Inc.*, 155 P.3d 318, 326 (Alaska 2007); *see also Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 599 (Alaska 2012) (holding that raising abandoned issue in reply brief "does not resuscitate it" (quoting *Braun v. Alaska Com. Fishing & Agric. Bank*, 816 P.2d 140, 145 (Alaska 1991))).

**72** *McGhee v. State*, 951 P.2d 1215, 1218 (Alaska 1998).

Specifically, we observed that the DMV could consider the constitutional infirmity of an out-of-state alcohol-related driving conviction "entered in violation of a driver's fundamental rights" when making licensing decisions.[73] This observation stems from the concern that "it would be manifestly unjust to allow that [unconstitutional] conviction" to justify revocation in Alaska.[74]

Here, Rivera offers no evidence of any such infirmity in his underlying convictions or revocation. In fact, Rivera does not challenge their constitutionality. Rather, he argues that it is manifestly unjust for the DMV to require him to pursue reinstatement through the New York authorities. We have not previously recognized manifest injustice in this context, and we do not recognize it here.

Further, Rivera waited ten years — and only after he was cited for driving without a license in Alaska — to seek reinstatement in New York. He also failed to fully exhaust New York's appeal process with regard to reinstatement of his license. Consequently, Rivera cannot demonstrate that Alaska's DMV must issue him a license in order to avoid manifest injustice.[75]

## V. CONCLUSION

The hearing officer's decision to deny Rivera's application for a driver's license is AFFIRMED.

---

[73] *Id.* at 1218 n.3.

[74] *See State, Dep't of Pub. Safety, Div. of Motor Vehicles v. Fann*, 864 P.2d 533, 537 (Alaska 1993).

[75] *See, e.g.*, *Poirot v. State, Dep't of Admin., Div. of Motor Vehicles*, No. S-12812, 2009 WL 564704, at *2 (Alaska Mar. 4, 2009) (holding "continued enforcement of [a] . . . license revocation is not manifestly unjust because [the individual] made no effort to challenge the revocation for sixteen years").